## UNION TRUST CO. v. UNITED STATES.
### No. J–575.

Court of Claims.
Dec. 7, 1931.

154

Caesar L. Aiello and John S. Flannery, both of Washington, D. C. (Frederic D. Mc-Kenney and G. Bowdoin Craighill, both of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (J. H. Sheppard, Bradley B. Gilman, and Eldon O. Hanson, all of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff as trustee under the will of Deming Jarves, deceased, brings this suit to recover the sum of $9,404.99, estate taxes levied against and collected from the estate of the said decedent under the Revenue Act of 1924, with interest thereon from the date of payment, August 27, 1925.

The basis of the plaintiff's claim is that the Commissioner of Internal Revenue erroneously included in the gross estate of the decedent for federal estate-tax purposes certain shares of stock in various corporations, which shares of stock, it is alleged, had in the lifetime of the said Deming Jarves been transferred by him as gifts inter vivos to his wife, Eliza Jackson Jarves.

The facts have been stipulated by the parties, and the issue presented for determination is whether the value of the securities set out in the findings, transferred by the said Deming Jarves to his wife in the written agreements hereinafter referred to, was properly included in the gross estate of the decedent, as defined in section 302 of the Revenue Act of 1924 (26 USCA § 1094 note).

The stocks in question were transferred by virtue of six separate written agreements, the terms and provisions of which are substantially identical, and are—

That Deming Jarves, being the owner of certain stocks and desiring to make a gift of them to his wife, assigned them, in blank, placed same in sealed envelopes, and delivered them to the Union Trust Company as trustee;

That the Union Trust Company, as trustee, agreed to hold the same for the joint lives of the two parties to said agreements, and upon the death of either, to deliver the stocks to the survivor as his or her absolute property;

That Deming Jarves, during his lifetime, should receive all dividends therefrom;

That the respective gifts were in addition to provisions made for his wife in his last will and testament and should not be taken into consideration in the distribution made thereunder; and

That the parties to said agreements or indentures might direct any other disposition of the property by means of a written instrument signed by them both.

It is the contention of the plaintiff that the written agreements evidence the intention of the donor to make absolute gifts inter vivos to his wife of the various stocks transferred under such agreements, subject only to a reservation of the income therefrom to the donor for the period of his life, and that such gifts were fully consummated and completed by delivery of the stocks therein mentioned to the plaintiff herein, and that nothing remained which the decedent could pass, transmit, or transfer at death which was taxable under the Revenue Act of 1924.

Gifts inter vivos have no reference to the future and go into immediate and absolute effect. In order to be effectual a gift inter vivos must be fully executed. If anything remains to be done, the transaction is a mere executory agreement to give, and title does not pass. One of the requisites to a valid gift inter vivos is the delivery of the thing given, and the delivery must be such as to vest the donee with control and dominion over the property and to absolutely divest the donor of his possession and control. Until such delivery has been made title to the property does not vest in the donee. While delivery of the property given is necessary to complete the gift, such delivery is not required to be made directly to the donee, but the delivery may be to a third person for the benefit of a donee. Where a delivery is made to a third person, as in the instant case, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee.

The plaintiff, upon the receipt of the various securities, issued in the name of Deming Jarves and signed in blank by him, made the following written declarations: "The Union Trust Company * * * hereby declares that it holds the same on deposit in a sealed envelope for and during the joint lives of said Deming Jarves and E. Jackson Jarves; and that in case said E. Jackson Jarves shall survive said Deming Jarves, said Union Trust

156

Company will deliver said certificates to said E. Jackson Jarves, as her absolute property; and in case said Deming Jarves shall survive said E. Jackson Jarves, said Union Trust Company will return said certificates to said Deming Jarves: Provided always, That said Deming Jarves and said E. Jackson Jarves may at any time by an instrument in writing signed by both of them and delivered to said Union Trust Company, direct any other disposition of said certificates so held. * * * "

■ The capacity in which the plaintiff acted in holding the securities involved must be determined from the language of the agreements of gift and from plaintiff's written declarations. The language appearing in the agreements of gift and in plaintiff's written declarations is substantially identical and, we think, clearly shows that the plaintiff received and held the securities as agent or trustee for both parties and not as trustee for the donee. Since the plaintiff acted as agent or trustee for both the donor and the donee, title to the securities could only vest in the donee when the securities were turned over to her by plaintiff in accordance with the terms of the agreements. The decedent, by the various agreements, contracted with his wife to sign certain certificates of stock in blank, to deliver the same to the plaintiff to be held by it during their joint lives, and to be turned over to her by plaintiff as her absolute property in the event she survived him. Under these circumstances and conditions, delivery of the securities to the plaintiff was not such a delivery of the property as is required to consummate a gift inter vivos. While the agreements are predicated on the expressed desire of the decedent to give the securities involved to his wife, the intent is manifest from the language used that such gifts are made, and are to be effective only, on the condition that she survives him. The rule is that where property, the subject of a gift, is to be delivered only in case of the death of the donor, a condition attaches to the delivery which signifies an intent that the gift shall become operative only in the event that the donee survives the donor. Corpus Juris, vol. 28, p. 646. (See authorities cited.)

The provision in the agreements that the decedent and his wife may at any time during the holding by plaintiff, by an instrument in writing signed by both, direct any other disposition of the property so held, is inconsistent with the theory of an intent on the part of decedent to make absolute and completed gifts of the property on their delivery to the plaintiff. In order to pass title a gift must be absolute and unconditional, and the delivery must be such as to divest the donor of his possession and control. Absolute control of property, the subject of a gift, is not divested where the donor reserves to himself the right, singly or with another, to make some other disposition of the property given.

The various agreements or indentures involved were executed and delivered in the state of Michigan and were to be performed in that state. The plaintiff contends that these agreements or indentures plainly establish a valid and completed gift inter vivos under the laws of Michigan. Negaunee National Bank v. Le Beau, 195 Mich. 502, 161 N. W. 974, L. R. A. 1917D, 852, and Lober v. Dorgan, 215 Mich. 62, 183 N. W. 942, are cited in support of this contention.

Neither of these cases is in point here. In the Negaunee National Bank Case, a father deposited with the bank a sum of money to the joint account of himself and daughter. The certificate, indorsed upon the ledger sheet of the plaintiff bank on which the account was entered, reads as follows:

"The sum deposited to this account belongs to

"Signature:  Euchrist Le Beau,
  "Sophia Charles,

jointly; it being understood each may withdraw on his or her individual order during their joint lives, and that any balance upon the death of either shall belong to the survivor.

"[Signed]  Euchrist Le Beau.
"[Signed]  Mrs. Ed. Charles."

Upon the death of the father the amount of the account was claimed by the daughter and also by the administrator of the father. The court, deciding in favor of the daughter, said:

"* * * The writing itself quite apart from the testimony of the vice president of the bank indicates on the part of Euchrist Le Beau the intention to create in his daughter Sophia Charles a present estate in the fund, equal to his own, together with the sole right to said fund in case of his death. This writing, therefore, does not constitute a testamentary disposition of the property of Euchrist Le Beau, but plainly amounts to a gift inter vivos. * * *

"Under the form of the deposit, with or without the passbook representing the same, either could have withdrawn the entire amount during the lifetime of the other."

The situation in the instant case is entirely different from that shown to exist in the

case cited. Here neither the decedent nor his wife, under the terms of the agreements, could obtain the shares of stock held by the plaintiff without the consent of the other. In the former case the donee had the absolute right, if she cared to exercise it, to withdraw from the bank all the funds in the joint account at any time after the deposit was made. The court, therefore, held title to the funds on deposit vested in her when made.

In the Lober Case, a real estate mortgage ran to "George W. Bush and Sarah Bush, his wife, * * * as joint tenants, with sole right to the survivor." The wife survived the husband and after his death collected $850 on the mortgage. Upon the death of the wife the administrator of the husband brought suit against her administrator for an accounting. It was urged that since there could be no joint tenancy in personal property in Michigan, with the incident of survivorship, one-half of the money collected belonged to the estate of the husband; that the words "with sole right of survivor" in the mortgage added nothing to the words "as joint tenants." The court, reaffirming the well-established rule in that state that joint tenancy in personal property with its right of survivorship does not exist, held that the law, however, does not forbid the creation of the right of survivorship in personalty, where it is created by the express act of the parties, and that by reason of the express language of the instrument the wife took the entire mortgage as survivor. The question decided in the Lober Case is not present in the instant case, and the rule announced is not applicable to the issue before us.

The challenged tax was assessed and collected under section' 302 of the Revenue Act of 1924 (43 Stat. 253, 304 [26 USCA § 1094 note]), the applicable provisions of which are—

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * intended to take effect in possession or enjoyment at or after his death, except * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke. * * *

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act."

The Commissioner of Internal Revenue followed the plain provisions of the statute in including the value of the securities in question in the gross estate of the decedent in computing the net value of the estate subject to the federal estate tax. The transfers made by decedent were intended to take effect in possession or enjoyment at or after his death, and the enjoyment thereof was subject at the date of his death to the reserved right of the decedent, in conjunction with his wife, to make other disposition of the property. Other disposition of the securities not having been made during the lifetime of decedent, the property interest and title to the securities passed, by virtue of the various agreements, to his wife upon his death, and their value as of that date was properly included by the Commissioner of Internal Revenue in the gross estate. Klein v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996.

In Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, it was held that section 402(c) of the 1918 Revenue Act (40 Stat. 1097), which is substantially the same as section 302(c) of the 1924 Act, could not be constitutionally applied to a gift inter vivos, not made in contemplation of death, and made long before the adoption of any congressional legislation imposing an estate tax or taxing gifts to take effect in possession or enjoyment at or after death. The Supreme Court has particularly pointed out in Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809, and in other cases, that the value of the gifts sought to be taxed in Nichols v. Coolidge were completely vested before the passage of the taxing act. Nichols v. Coolidge is not in point in the instant case where the property of the gifts passed and became vested subsequent to the effective date of the taxing statute. Here the taxing statute antedates the taxable transfers and the constitutional question involved in Nichols v. Coolidge, and other cases cited does not arise.

The plaintiff's claim for refund was properly rejected, and its petition will be dismissed. It is so ordered.