342 F.2d 957
 Edythe YENOWINE, Plaintiff-Appellee, and
Elsie Densmore, Donald D. Densmore, and Daniel W. Rowe, Administrator of the Estate of Lila Crawford, Deceased, Intervenors-Appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
 No. 15947.
 United States Court of Appeals Sixth Circuit.
 April 2, 1965.
 
 Henry V. B. Denzer, Louisville, Ky. (Hogan, Taylor, Denzer & Bennett and Henry A. Triplett, Louisville, Ky., on the brief), for appellant.
 William L. Gibson, Louisville, Ky. (Gibson & Gibson, Louisville, Ky., on the brief), for intervenors-appellees.
 Richard H. Nash, Louisville, Ky., for plaintiff-appellee.
 Before WEICK, Chief Judge, and MILLER and PHILLIPS, Circuit Judges.
 SHACKELFORD MILLER, Jr., Circuit Judge.
 
 
 1
 The appellant, State Farm Mutual Automobile Insurance Company, issued its automobile liability insurance policy No. 332085 — F-15-17 to the plaintiff, Edythe Yenowine, covering a 1953 Plymouth automobile owned by her, effective April 7, 1956. On August 11, 1960, while the policy was in force and effect by reason of annual renewals, she purchased and acquired title to a 1955 Plymouth automobile without any trade-in being involved, which she drove regularly until November 30, 1960. Shortly after purchasing and driving the 1955 Plymouth she discovered that it "burned oil" and was not a good car, and notified the seller to that effect. He examined the car, was of the opinion that the motor was bad, and told her that as soon as he could get a car that he thought would suit her, he would replace the car. In November 1960 he got a 1956 Plymouth, which he considered suitable, and called Mrs. Yenowine. On November 30, 1960, she returned the 1955 Plymouth to him and he transferred the 1956 Plymouth to her in exchange.
 
 
 2
 On June 9, 1961, Mrs. Yenowine, while driving the 1956 Plymouth, was involved in an automobile accident in Louisville, Kentucky, which resulted in personal injuries to two of the occupants of the other car, and in death to a third occupant of the other car. The injured occupants of the other car and the Administrator of the deceased party instituted action in the state court against Mrs. Yenowine, who called upon the appellant insurance company to defend the action under its policy No. 332085 — F-15-17 issued to her and covering the 1953 Plymouth. It was her contention that the coverage under that policy included the 1956 Plymouth under a provision therein which included in its coverage a newly acquired automobile which replaced the automobile covered by the policy, which will be discussed more in detail hereinafter. The insurance company was of the opinion that the policy did not cover the 1956 Plymouth and declined to defend the action. Mrs. Yenowine employed her own attorney to do so, whose fee was $1,000.00. The trial resulted in judgments against Mrs. Yenowine, totaling $18,260.39. The insurance company refused to pay both the judgments and the attorney's fee.
 
 
 3
 Mrs. Yenowine filed this action in the state court against the insurance company for the amount of the judgments, the attorney's fee, and for various additional amounts on account of personal injuries and medical expenses suffered by herself and her two children, who were in the car with her, and for property damage to her automobile, which she claimed were also covered by the policy. The action was removed to the United States District Court, where the injured occupants of the other car and the Administrator of the deceased party filed an Intervening Complaint seeking enforcement of their judgments against the insurance company in accordance with the terms of the policy. The insurance company denied coverage of the 1956 Plymouth under its policy No. 332085 — F-15-17, which was originally issued to cover the 1953 Plymouth.
 
 
 4
 The provision in policy No. 332085 — F-15-17, under which Mrs. Yenowine claimed coverage, reads as follows:
 
 
 5
 "III. Automobile Defined.
 
 
 6
 "(a) AUTOMOBILE. Except where stated to the contrary, the word `automobile' means:
 
 
 7
 "(1) DESCRIBED AUTOMOBILE — the motor vehicle or trailer described in the declarations;
 
 
 8
 * * * * * *
 
 
 9
 "(4) NEWLY ACQUIRED AUTOMOBILE. — an automobile, ownership of which is acquired by the named insured, * * * if (a) it replaces an automobile owned * * and covered by this policy, or the company insures all automobiles owned by the named insured * * on the date of its delivery, and (b) the named insured * * * notifies the company within thirty days following such delivery date. * *"
 
 
 10
 The courts which have interpreted this clause in insurance policies are generally in accord, as are we, with the following ruling as to what constitutes a replacement vehicle.
 
 
 11
 "* * * the replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or be incapable of further service at the time of the replacement."
 
 
 12
 State Farm Mutual Automobile Insurance Co. v. Shaffer, 250 N.C. 45, 108 S.E.2d 49; Mitcham v. Travelers Indemnity Co., 127 F.2d 27, C.A. 4th; Lynam v. Employers Liability Assurance Corp., 218 F.Supp. 383, D.C.Del. The parties herein apparently accepted this construction, the substance of which the District Judge gave in his instructions to the jury.
 
 
 13
 Upon the conclusion of the evidence, the District Judge overruled defendant's motion for a directed verdict and submitted the case to the jury on four interrogatories, the following three of which are applicable to the question now under consideration. In answer to whether the 1955 Plymouth purchased on August 11, 1960, replaced the 1953 Plymouth, the jury said "no." In answer to whether the 1956 Plymouth purchased on November 30, 1960, replaced the 1953 Plymouth, the jury said "yes." In answer to whether the 1956 Plymouth replaced the 1955 Plymouth as "replacement" was defined in the instructions, the jury said "no." After overruling defendant's motion for judgment notwithstanding the verdict, or in the alternate for a new trial, judgment was entered in favor of the plaintiff and intervening plaintiffs, from which this appeal was taken by the insurance company.
 
 
 14
 The question argued by Mrs. Yenowine in the District Court and in this Court is whether the 1953 Plymouth was replaced by the 1956 Plymouth within the provisions of the policy originally issued to cover the 1953 Plymouth. We are of the opinion that this is not the correct analysis of the question involved. The undisputed facts clearly show that the 1956 Plymouth replaced the 1955 Plymouth, which was purchased by Mrs. Yenowine and later replaced by the seller with the 1956 Plymouth when complaint was made by Mrs. Yenowine that the car which he sold to her was defective. With respect to her ownership and use of the 1955 Plymouth, Mrs. Yenowine testified that she complained to the seller about the car and "I kept it until I got a replacement." The seller testified that Mrs. Yenowine complained about the 1955 Plymouth and brought the car to his lot for him to look at, and that after listening to the motor he told her that "the motor was bad and as soon as I could I would replace that car." He also testified about what he did about "replacing that automobile," and in answer to the direct question, "Did you replace that automobile with some other car?" he answered "I did." by taking back the 1955 Plymouth and transferring to Mrs. Yenowine the 1956 Plymouth. There is no contradiction in any way in the evidence about the fact that Mrs. Yenowine acquired the 1956 Plymouth as a replacement for the 1955 Plymouth, not the 1953 Plymouth. The answer of the jury to the interrogatory that the 1956 Plymouth did not replace the 1955 Plymouth is directly contrary to the undisputed evidence and can not stand. Under this analysis of the question, the 1956 Plymouth replaced the 1955 Plymouth, not the 1953 Plymouth, and there was no insurance coverage carried over from the coverage of the 1953 Plymouth.
 
 
 15
 We think that the real question presented by this case is whether the 1955 Plymouth replaced the 1953 Plymouth, in which event the extended coverage would be applicable to the 1955 Plymouth. This factual issue was decided against the plaintiff by the jury, which answered one of the interrogatories by finding that the 1955 Plymouth did not replace the 1953 Plymouth. But even if it should be so held, this would not help the plaintiff's case, in that the 1955 Plymouth was not the car involved in the accident.
 
 
 16
 The best that we can make out of plaintiff's case is the contention that the 1955 Plymouth replaced the 1953 Plymouth, contrary to the jury's verdict, and that thereafter the 1956 Plymouth replaced the 1955 Plymouth and automatically acquired the insurance coverage which the 1955 Plymouth had acquired. This would require us to hold that the policy covered not only a car that replaced the car that was originally insured, but also a third car that replaced the second car that replaced the first car. This, we are not willing to do at the present time, but, assuming, without deciding, for the purpose of argument that such a construction is a permissible one, we will consider whether either the 1955 Plymouth or the 1956 Plymouth replaced the 1953 Plymouth within the meaning of the policy provision relating to a newly acquired automobile.
 
 
 17
 The evidence appears to us to be undisputed that at the time of the purchase of the 1955 Plymouth and of the acquiring of the 1956 Plymouth on November 30, 1960, the 1953 Plymouth was not "incapable of further service." It remained thereafter in the driveway of Mrs. Yenowine's home. Mrs. Yenowine admitted in her testimony that it was "in running order" on November 30, 1960, and up until March 1, 1961, when the license expired; that her son drove it in both January and February 1961; and that she also drove it one time after November 30, 1960, and encountered no difficulty in doing so. Her son testified that he drove the 1953 Plymouth "around to the store and ball games" in December 1960. We find no evidence directed to any specific trouble in the car, except the fact that the battery ran down, which in no way transformed it into a car "incapable of further service." It will also be noted that Mrs. Yenowine testified that she did not trade in the 1953 Plymouth on the 1955 Plymouth because she planned to give it to her son, and that when she told her son after she got the 1956 Plymouth that he could have it "it ran all right." Certainly, Mrs. Yenowine did not plan to give her son a car that was "incapable of further service." The contention that the 1953 Plymouth was "incapable of further service" is completely contradicted by the undisputed evidence.
 
 
 18
 With respect to the other necessary requirement that the automobile originally insured "must be disposed of" at the time when the replacement vehicle is acquired, Mrs. Yenowine contends that the 1953 Plymouth was given to her son, and so disposed of in that way. But an analysis of her testimony fails to show just when the alleged gift was made or that the physical possession of the car or of the keys thereto was ever transferred to the son. On the contrary, Mrs. Yenowine testified, "I had promised it to my son, Larry, going to give it to him." and "He knew that the car was going to be his when he got the insurance for it." and "I don't know exactly when it was, but he understood when I got a new — another car, he was to get the '53. When I got the 1956 car and it was satisfactory, then Larry knew he was going to get the '53." and "He knew he was going to get it when I bought another car. For a long, long time, he knew it." She also admitted that it was just an oral promise that she was going to give it to him and that she did not draw up a bill of sale. She further testified that the 1953 Plymouth continued in her name until May or June 1962, at which time it was traded in on a car that was purchased by her daughter.
 
 
 19
 There was also the testimony of the son that he and his mother talked it over about her giving him the car when she got another one, but that she never did actually give it to him and that he "never did actually get the car." This conclusion is supported by Mrs. Yenowine's own testimony with respect to the use by the son of the 1953 Plymouth in January 1961 when she said "It was driven a time or two. Larry sneaked it out.", which indicates that she considered herself as still being the owner of the car after she acquired and was operating the 1956 Plymouth.
 
 
 20
 Under these facts, we think that as a matter of law there was no gift of the 1953 Plymouth from Mrs. Yenowine to her son prior to or at the time of her acquisition of the 1956 Plymouth. Government Employees Insurance Co. v. Thomas (Ky. Court of Appeals) 357 S.W. 2d 548; Rodriquez v. Rodriquez, 310 F. 2d 62, 64-65, C.A. 9th; Tyson v. Commissioner, 146 F.2d 50, 54, C.A. 8th; Murray v. Gadsden, 197 F.2d 194, 205, C.A.D.C. A promise or intention to make a gift in the future does not constitute a transfer of title so as to make the promisee the owner of the property. Allen v. Withrow, 110 U.S. 119, 128; Union Trust Co. v. United States, 54 F.2d 152, 155, 73 Ct.Cl. 315, cert. denied, 286 U.S. 547, 52 S.Ct. 500, 76 L.Ed. 1284; True v. United States, 51 F.Supp. 720, 725, E. D.Wash.; In re: F. P. Newport Corp., 194 F.Supp. 757, 761, S.D.Cal.
 
 
 21
 Since the 1953 Plymouth was owned and operated by Mrs. Yenowine after the purchase of the 1955 Plymouth and the acquisition of the 1956 Plymouth, the judgment of the District Court would result in Mrs. Yenowine receiving insurance coverage for two automobiles at the same time for a premium insuring only one car. This, of course, was not the purpose of the policy provision under which she claims in this case.
 
 
 22
 We are of the opinion that appellant's motion for judgment notwithstanding the verdict should have been sustained. The judgment is reversed and the case remanded to the District Court for the entry of a judgment in favor of the defendant.