**OHIO CASUALTY INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**Phyllis CAMPBELL, Defendant-Appellant.**

**No. 16026.**

United States Court of Appeals
Sixth Circuit.
May 14, 1965.

Stanley A. Stratford, Louisville, Ky., Hugh K. Campbell, Campbell & Stratford, Louisville, Ky., on the brief, for appellant.

John P. Sandidge, Louisville, Ky., Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, Ky., on the brief, for appellee.

Before WEICK, Chief Judge, CECIL and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

The appellee insurance company issued a policy of liability insurance to Murray Vernon Simmons on November 5, 1962, covering a 1956 Packard automobile that had been wrecked the previous day. The insured took out the insurance on the wrecked car because he believed that if he had insurance on it, even after the accident, he would not lose his driver's license.

Thereafter, on December 20, 1962, at about 4:00 p. m. the insured agreed to purchase a 1947 Chevrolet automobile in order to provide transportation to take his wife back and forth to work. The insured paid $50 in cash for the Chevrolet to a twenty-year-old boy who is alleged to have been its owner, although the title was in the name of the boy's father. The father did not sign the title papers until the following day. The Packard had not been repaired and was not drivable, but the insured continued to own it and kept it in its wrecked condition at all times involved in this litigation.

In the late afternoon or early evening of December 20, only a short while after the insured had agreed to purchase the Chevrolet and had paid for it, the latter vehicle was involved in an automobile accident, the circumstances of which are hereinafter set forth.

The principal question presented on this appeal is whether the Chevrolet automobile was covered by the provisions of the insurance policy as a replacement automobile or an additional automobile owned by the insured.[1]

Appellant herein, who suffered injuries in the accident, filed suit against the insured and others in a state court. The insurance company thereupon filed the present suit in the district court for declaratory judgment to determine the question of whether the Chevrolet was covered under the insurance policy. The district court directed a verdict in favor of the insurance company on the ground that the Chevrolet automobile involved in the accident was not insured under the terms of the policy.

The file contains a signed statement of the insured, setting forth details concerning the acquisition of the Chevrolet

---

1. The pertinent language of the insurance policy is as follows:

"If the named insured owns more than one automobile on the effective date of the policy it is agreed that:

"1. such insurance as is afforded by the policy with respect to an owned automobile applies only to the owned automobile described in the declarations, or trailer owned by the named insured, and includes a temporary substitute automobile used in place thereof.

"2. in event the named insured acquires ownership of another private passenger, farm or utility automobile, such insurance also applies to such automobiles as of the date of its acquisition, provided (a) it replaces the owned automobile described in the declarations, or (b) it is in addition to the total number of private passenger, farm or utility automobiles owned by the named insured."

and the accident in question, a part of which is quoted in the margin.[2]

The record further shows that on the day following the accident, before they learned that the Chevrolet had been involved in a wreck, the minor boy who had agreed to sell the automobile went with the insured to the county courthouse to transfer title. They had to go back home before the transfer could be consummated, because the father of the minor had not signed the papers and it was necessary for him to do so because the title was in his name. The father thereupon signed the papers and the transfer of title to the insured was consummated on December 21, the day after it had been involved in the accident.

We hold that the district court was correct in directing a verdict on the ground that the Chevrolet was not insured under the terms of the policy. Under no circumstances could the language of the policy (see note 1) be construed to cover the Chevrolet on the day of the accident unless it was owned by the insured on that day. The record clearly shows that acquisition of ownership of the Chevrolet by the insured had not been consummated on the afternoon of the accident. The insured merely had paid $50 to a twenty-year old boy and received his receipt therefor. There was no delivery of the automobile to insured that afternoon. The boy did not deliver the keys to the insured that day, but was

2. "The reason I took out insurance on my wrecked Packard the day after it was wrecked in the accident was because I thought that if I had insurance on it, even after the accident, I would not lose my driver's license.

"From the time my Packard was wrecked until December 20th I had no car that was drivable. I had my wrecked Packard but could not use it. Then on December 20th there was an automobile accident on Dixie Highway involving a 1947 Chevrolet. This Chevrolet belonged to John Ostertag, 313 S. Shelby Street, but the title was in the name of his father, Charles J. Ostertag, Sr., of 1380 Willow Avenue. This Chevrolet was not running, but was parked at the curb in front of John Ostertag's house, 313 S. Shelby Street. I wanted to buy this car so that I would have transportation to take my wife back and forth to work and I offered to buy it from John Ostertag several times. He always wanted $100 for it and I thought that this was too much. Later he came down to $75 which I thought was still too much. Finally on the same day as the accident on Dixie Highway involving this 1947 Chevrolet, I persuaded John Ostertag to take $50 for it. John Ostertag is 20 years old, I believe. This was in the late afternoon and to my best recollection I would say it was about 4:00 PM. We went into John Ostertag's house and I only had $45 on me. I went next door where there is a grocery and tavern and borrowed $5 from a fellow there. I then gave the $50 to John Ostertag and had him give me a receipt. I have the receipt at home now. It was too late for us to make any transfer of title at that time of day and so all I got was the receipt.

"John Ostertag did not give me the keys to the car that afternoon when I gave him the $50. He was in a hurry to go some place and I did not think I would be able to get the car started anyway, so I did not insist on getting the keys and he was going to give them to me the next day. I then went home and found an old set of keys and after doing some work on the Chevrolet, I got it started. This was in front of Ostertag's house, next to the tavern. At the tavern was Henry Robinson, Jr. I knew him, but not real well. I did not know where he lived. However, I had known him for about a year. He was standing around there when I got the car started and I gave him a dollar and told him to go and get me some gas for it. I told him to go to the Spur Station at Fehr and Baxter where I trade. I save the trading stamps this station gives. I gave him instructions to go to this particular station to go and get a dollar's worth of gas and bring the car back to the tavern next to Ostertag's house. I did not give him permission to use the car for any other purpose or to go any place else except to the Spur Station. I later learned that he took his mother Christmas shopping and had the wreck while doing so. He, however, did not have my permission to use the car for this purpose and was operating it without my permission and consent at that time."

**14**

going to give them to him the following day. Without the permission of either the boy or his father, the insured went to his own home and secured a set of his own keys and used them to start the car, which was still parked in front of the house of the seller. The father, in whose name the car was registered, did not ratify the sale until the following day. We hold that under these facts the insured did not own the Chevrolet on the day of the accident, and did not acquire ownership until the following day. K.R. S. § 186.200; Brooks v. Williams (Ky.) 268 S.W.2d 650, 652; Harlow v. Dick, (Ky.) 245 S.W.2d 616, 618; Bobbitt v. Cundiff, 296 Ky. 802, 177 S.W.2d 596, 598; Cf. Yenowine v. State Farm Mutual Automobile Insurance Company, 342 F.2d 957 (C.A. 6), April 2, 1965.

A number of other contentions are made by appellant, all of which have been considered by the court and found to be without merit.

The judgment of the district court is affirmed.