Carrol Jack **KELLY**, Betty Kelly

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.**

Civ. A. No. 5552.

United States District Court
E. D. Tennessee, N. D.

July 29, 1966.

Yancey & Butler, Knoxville, Tenn., for plaintiffs.

J. E. Pearman, Harriman, Tenn., for defendant.

MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

This matter has been submitted to the Court for a declaratory judgment upon the basis of facts agreed upon and stipulated by the parties pursuant to the pretrial conference.

In 1961, plaintiffs took out State Farm Mutual Automobile Insurance Company's automobile policy No. 1156 194–All–42 upon a 1960 Rambler Station Wagon, No. 124273. Premiums were promptly paid upon the policy up to and including December 12, 1965.

On or about October 12, 1965, said Rambler came into such a state of disrepair that it was not drivable. Whereupon, plaintiffs, on or about that date, purchased a 1955 Chrysler to provide necessary transportation until repairs could be made. Between October 12 and December 6, 1965, both vehicles were driven. On December 6, when the repairs upon the Rambler were completed it became obvious the Chrysler was in

the better state of repair and better suited to the family needs than the Rambler. On that date, December 6, the Rambler was sold and plaintiffs would testify that on that date they intended to replace the Rambler with the Chrysler; and defendant can offer no proof to the contrary.

Thereafter, on December 12, 1965, plaintiffs' son, George John Kelly, while a member of their household and with their permission, was driving the Chrysler and became involved in a serious accident. No suits have been filed as yet, although an attorney has been retained by the owner and occupant of the other car, who is awaiting determination of this petition for a declaratory judgment before filing suit.

Plaintiffs promptly notified defendant's agent, through whom they had acquired the policy, of the accident, but defendant has denied coverage on the Chrysler under the policy written upon the Rambler on the ground that plaintiffs failed to notify insurer of the replacement of the insured automobile by a newly acquired automobile within the thirty day period from delivery thereof as prescribed by the policy—and that a car owned by the policyholder fifty-five days (prior to disposal of the other car) was not a newly acquired automobile under the definition in the policy.

Plaintiffs claim the thirty day notice period did not begin to run until December 6, 1965, the date the Rambler was sold, on which date plaintiffs state they intended the Chrysler to replace the Rambler described in the policy.

The parties agree that no additional premium would be required under the policy by reason of the replacement of the Rambler by the Chrysler.

They further agree that there is no dispute as to the facts and that the Court should render a summary judgment.

Since the facts are not in dispute, decision must turn upon the language of the Policy. Insuring Agreement 1 thereunder covered "The Owned Automobile." The Policy defines an owned automobile in the following language:

"*Owned Automobile*—means the private passenger automobile, utility automobile or trailer described in the declarations and includes a *temporary substitute automobile* and a *newly acquired automobile,* and under coverages A, B, C and M a trailer owned by the named insured. Under coverages F and G, 'owned automobile' also includes wearing apparel and luggage owned by the named insured or a relative while such property is in or upon such automobile." (Emphasis added.)

A Temporary Substitute automobile is defined as follows:

"*Temporary Substitute Automobile* —means an automobile *not owned by the named insured* while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." (Emphasis added.)

And a Newly Acquired Automobile is defined:

"*Newly Acquired Automobile*— means an automobile, *ownership of which is acquired by the named insured if (1) it replaces an automobile owned by the named insured and covered by this policy,* or the company insures all automobiles owned by the named insured on the date of its delivery, *and (2) the named insured notifies the company within 30 days following such delivery date.* The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." (Emphasis added.)

Obviously the Chrysler was not a Temporary Substitute automobile, since by definition such an automobile meant one "not owned by the named insured." By stipulation the Chrysler was purchased on or about October 12, 1965 and was, therefore, owned by the insured.

The next question is whether the Chrysler fell within the meaning of a

"Newly Acquired Automobile" as defined in the policy. Plaintiffs argue that they did not intend for the insured automobile—that is, the Rambler—to be "replaced" until the date of the sale of that vehicle, so that the thirty day period for notification did not begin to run until that date, namely, December 6.

The consequence of accepting December 6 as the replacement date is that the accident would have occurred well within a thirty-day notice period. On the other hand, if the thirty-day period ran from the delivery date, the accident would have occurred beyond the thirty-day period, and since no notice was given in the period there could be no coverage.

The defendant argues that, under the language of the definition, there is automatic coverage of the newly acquired car only if the notice is given within 30 days of the delivery date.

No Tennessee statute has been cited to the Court, and it has found none, which would, as in some states, make coverage of the car mandatory on terms other than those set forth in the policy. See Farm Bureau Auto Ins. Co. v. Martin, 97 N.H. 196, 84 A.2d 823, 29 A.L.R.2d 811.

■■ There are no Tennessee cases construing a clause covering a Newly Acquired Automobile. The Court is, of course, cognizant of the general rules of law in the State of Tennessee with respect to the construction of insurance policies as set forth in Hahn v. Home Life Insurance Co. of New York, 169 Tenn. 232, 84 S.W.2d 361.

"When an insurance contract is so drawn as to be ambiguous, or to require interpretation, or to be fairly susceptible of two different constructions, so that reasonably intelligent men, on reading the contract, would honestly differ as to the meaning thereof, that construction will be adopted which is most favorable to the insured.

"But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."

and that an ambiguous policy is construed against the insurer. Universal Life Insurance Company v. Lillard, 190 Tenn. 111, 228 S.W.2d 79. On the other hand if the terms of a contract are clear and unambiguous, they will be taken and understood in their plain, ordinary and popular sense. Standard Life Ins. Co. v. Hughes, 203 Tenn. 636, 637, 315 S.W. 2d 239.

■ In this policy, the language with respect to coverage of the newly acquired automobile seems quite clear. It must (1) replace an automobile owned by the insured and covered by the policy and (2) the named insured must notify the insured within 30 days following delivery date.

The intention with respect to the status of the 1955 Chrysler at the time of its purchase on October 12, 1965 is found in two consecutive sentences in the stipulation, to-wit: "On or about October 12, 1965, the 1960 Rambler Station Wagon became in such severe disrepair that it was not drivable so the complainants purchased a 1955 Chrysler automobile to provide necessary transportation until the 1960 Rambler could be repaired. Between Oct. 12, 1965 and Dec. 6, 1965 both vehicles were driven."

Obviously at the time of its purchase the Chrysler was not a "Newly Acquired Automobile" within the meaning of the policy since it did not then replace an owned automobile then owned by the insured and covered by the policy. It was hence not covered by the policy.

Then, quoting again from the stipulation: "On December 6, 1965, the repairs to the Rambler automobile were completed when it became obvious that the 1955 Chrysler was in better condition and better suited for a family car then the 1960 Rambler * * * On December 6, 1965, the 1960 Rambler was sold. If testifying, the complainants would say that on

the date, December 6, 1965, they intended to replace the 1960 Rambler with the 1955 Chrysler."

Plaintiffs say they "replaced" the Rambler when it was sold on December 6, and that their intention to do so was manifested on that date. Our Sixth Circuit Court of Appeals had before it very recently in Yenowine v. State Farm Mutual Automobile Ins. Co., 342 F.2d 957, 959, the same defendant, the same policy (with inconsequential verbal changes) and an involved situation with reference to a replacement automobile. The Court said:

"The courts which have interpreted this clause in insurance policies are generally in accord, as are we, with the following ruling as to what constitutes a replacement vehicle.

'* * * the replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or be incapable of further service *at the time of the replacement.*'

"State Farm Mutual Automobile Insurance Co. v. Shaffer, 250 N.C. 45, 108 S.E.2d 49; Mitcham v. Travelers Indemnity Co., 127 F.2d 27, C.A.4th; Lynam v. Employers Liability Assurance Corp., 218 F.Supp. 383, D.C.Del. * * *" (Emphasis added.)

The parallel between the two cases is not complete since in Yenowine the owner was in possession of both cars at the time of the accident; but both cases point up the burden upon the insurance company if an "intention" rather than the overt act, specifically called for in the policy, namely, the "delivery" of replacement automobile, were allowed to control the policy coverage.

In our case, it is stipulated that both cars were driven at the same time between October 12, 1965 and December 6, 1965—without accident. Therefore, the "intention" to replace crystallized on December 6, 1965. In the Yenowine case both cars were driven between November 30, 1960 and June 9, 1961 when plaintiff had an accident involving the "replacement" car. On November 30, 1960, the original car was not "incapable of further service" and both she and her son drove it between November 30, 1960 and March 1 when its license expired, and it was not traded when the replacement was acquired because she "planned" to give it to her son—but nothing had been done about it either before or after the replacement.

■ We think the position taken by plaintiff in this case and contended for in Yenowine has a basic weakness. It would permit a plaintiff after an accident to crystallize to its own advantage an intention which up to the time of the accident had been embryonic and perhaps never communicated to another person. If allowed, the insurance company would in effect be covering two cars in one policy with an enhanced possibility of liability. In Yenowine the Court said:

"Since the 1953 Plymouth was owned and operated by Mrs. Yenowine after * * * the acquisition of the 1956 Plymouth, the judgment of the District Court would result in Mrs. Yenowine receiving insurance coverage for two automobiles at the same time for a premium insuring only one car. This, of course, was not the purpose of the policy provision under which she claims in this case."

Delivery is critical and the insurer must be notified within the time prescribed in the policy. Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483; Michel v. Aetna Cas. & Sur. Co., 252 F.2d 40 (C.A. 10).

Such weakness would not arise if the clear language of the policy were applied. When the Chrysler in our case was delivered, it was not a replacement, since the old car was not disposed of, and was not incapable of further service, and was to be repaired. And no notification was given by plaintiff within 30 days of the delivery of the Chrysler. As was said

in Mitchum v. Travelers Indemnity Co., 127 F.2d 27, 29 (C.A. 4):

"The requirement of notice was of obvious importance to the company. Amongst other purposes it served to inform the company of the identity and character of the vehicle to be covered by its policy and to enable the company to exercise the rights reserved to it in the policy and to ascertain whether the insured had complied with his obligations thereunder. It cannot be said that the policy provision was so immaterial to the risk that it could not be invoked for the purpose of avoiding the company's contractual liability. Compare Sly v. American Indemnity Co., 127 Cal.App. 202, 15 P.2d 522. The failure to give the notice was fatal to the claim of the administratrix and the injured person that the car was covered by the policy when the accident took place.

"This form of policy is relatively new and little controversy over its meaning has reached the courts. Some question has arisen as to whether the notice provision is a condition precedent to the transfer of the insurance, or a condition subsequent under which the insurance attaches to the new car without notice, but becomes void at the ten day period if no notice is given. See Appleman, Automobile Liability Insurance, page 142 et seq.; Ash-Grove L. & P. Cement Co. v. Southern Surety Co., 225 Mo.App. 712, 39 S.W. 2d 434. The question has also arisen in this connection as to the liability of the insurer if an accident takes place within the ten day period and notice is later given either before or after the termination of the period. See Continental Casualty Co. v. Trenner, D.C., 35 F.Supp. 643; Jamison v. Phoenix Indemnity Co., D.C., 40 F. Supp. 87. But we are not now concerned with these questions for in the pending case the accident took place after the expiration of the ten day period and before any notice to the company of the acquisition of the new car, so that, whether the notice provision

sets up a condition precedent or a condition subsequent, the new car was not covered by the policy at the time that the insured's liability to Micham arose."

In our opinion, the language of the policy with respect to a Newly Acquired Automobile was clear. Its terms were not followed by plaintiff. There was no notification within 30 days of delivery and there was no language in the policy applicable to the factual situation developed in the stipulation. The Court is of the opinion and declares it to be its judgment that the 1955 Chrysler automobile did not replace the 1960 Rambler described in the insurance policy and that defendant is not obligated to furnish plaintiffs with a defense in any civil action arising out of the December 12, 1965 accident nor is it liable to pay any judgment against plaintiffs arising out of such action.