578 So.2d 1212 (1990)
A & S TRUCKING COMPANY, INC.
v.
FIRST GENERAL INSURANCE COMPANY
v.
LEND-LEASE, a DIVISION OF NATIONAL CAR RENTAL SYSTEM, INC.
No. 07-CA-59168.
Supreme Court of Mississippi.
December 19, 1990.
Rehearing Denied May 29, 1991.
Thomas Morris, Levi Boone, III, Ellis Turnage, Morris & Turnage, Cleveland, for appellant.
Thomas W. Tardy, III, Julie E. Chaffin, Thomas, Price, Alston, Jones & Davis, for appellee.
John H. Barnett, III, Jerome L. Lohrmann, Jackson, cross-appellee/cross-appellant.
Before HAWKINS, P.J., and ANDERSON and PITTMAN, JJ.
PITTMAN, Justice, for the court:

STATEMENT OF THE CASE
What began as a simple transaction to rent three truck-tractors by A & S Trucking Company of Cleveland, Mississippi, has turned into litigation which appears to be a case of first impression in this jurisdiction.
The Plaintiff below, Lend-Lease, a Division of National Car Rental System, Inc., brought the action below to obtain the proceeds of a policy of insurance purchased by A & S Trucking Co. of Cleveland, Mississippi. The insurance had been purchased by A & S, as required by the lease which provided for the lease of three vehicles to A & S from Lend-Lease. The insurance was purchased from First General Insurance Company through two intermediaries, one a sales agent in Cleveland, Mississippi, *1213 and one an underwriter for truck insurance.
The original action was filed on October 28, 1985, by Lend-Lease, against A & S, Rimmer-Child Insurance Agency, (the local insurance agent), First General Insurance Co. (the insurer), and Interstate Truck Underwriters, Inc. (the insurance underwriter), and sought actual damages for the loss of a truck rented to A & S, and actual and punitive damages against the agent, the underwriter, and First General.
Rimmer-Child (the agent) and Interstate Trucking (the underwriter), were dismissed as parties by order of the circuit court rendered before trial. Those dismissals have not been appealed to this Court.
The issue of punitive damages was decided by Summary Judgment in favor of First General and against A & S and Lend-Lease on August 10, 1987.
After an August 13, 1987 bench trial, the circuit judge found for the Plaintiff below, Lend-Lease, on the issue of liability for the value of its lost truck-tractor, in the amount of $49,250.00.
The final judgment and other issues were appealed as follows:
A & S Trucking appeals only as to First General and the denial of actual and punitive damages.
First General appeals only as to Lend-Lease and the claim on policy for the value of the truck-tractor.
Lend-Lease appeals only as to First General and the denial of punitive damages, pre-judgment interest and attorney's fees.
The error(s) assigned by each are as follows:
a. A & S Trucking:
WHETHER AN INSURED IS ENTITLED TO PUNITIVE DAMAGES WHEN THE INSURANCE CARRIER DENIES COVERAGE BASED ON REASONS IN DIRECT CONTRADICTION OF THE INSURANCE POLICY, AND WHEN THE CARRIER PERFORMS A GROSSLY INADEQUATE INVESTIGATION OF THE CLAIM.
b. First General:
THERE IS NO COVERAGE UNDER THE TERMS OF THE POLICY.
PUNITIVE DAMAGES ARE NOT RECOVERABLE.
ATTORNEY FEES ARE NOT RECOVERABLE.
PREJUDGMENT INTEREST IS NOT RECOVERABLE.
LEND-LEASE HAS NO STANDING TO BRING THIS LAWSUIT SINCE IT IS NOT A NAMED INSURED OR OTHER PROPER PARTY PLAINTIFF.
c. Lend-Lease:
THE TRIAL COURT ERRED IN GRANTING TO FIRST GENERAL INSURANCE COMPANY PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF BAD FAITH AND PUNITIVE DAMAGES.
THE TRIAL COURT ERRED AND (sic) DENYING PLAINTIFF PREJUDGMENT INTEREST AND ATTORNEY'S FEES.

STATEMENT OF FACTS
On February 28, 1985, Lend-Lease entered into a rental agreement with A & S Trucking Co., provided that A & S was to lease three Kenworth tractors from Lend-Lease. The terms of the lease obligated A & S to obtain and maintain liability and collision insurance on the three tractors. A & S obtained the insurance on February 22, 1985, by adding the three Kenworth tractors onto an existing policy which had been issued by First General, through an underwriter, Interstate Truck Underwriters, Inc., and through a local agent, Rimmer-Child Insurance Agency. As further assurance of coverage, Lend-Lease obtained a certificate of insurance from Rimmer-Child, which listed the three Kenworth tractors as the insured objects.
Subsequent to the addition of the three Kenworths on A & S's policy of insurance, a course of events began which triggered the instant action. According to the testimony of numerous witnesses, including Jerry Shoen, a lease salesman working for Lend-Lease and Jerry Jeffress, the district manager for Lend-Lease, the Kenworth *1214 trucks were used for a short time, on a trial basis. Once A & S determined that the Kenworths were satisfactory, they were returned to Lend-Lease, for clean-up, and to have the decals and lettering from the previous lessee removed, to have the proper A & S logo stenciled on each vehicle, and to have the vehicles recertified in the name of A & S. In the interim, other trucks were delivered to A & S for their use, including three Peterbilt tractors:
Lend-Lease's complaint states:
"That while awaiting delivery and preparation of the leased tractors, A & S Trucking Company, Inc. rented on a substituted temporary basis three (3) Peterbilt tractors, including Peterbilt tractor bearing Plaintiff's identification number of 274083."
As fate would have it, on March 19, 1985, the Peterbilt tractor was involved in an accident, while driven by an employee of A & S. The truck was a total loss. First General paid the liability claim under the liability portion of the policy without question. The first indication of a problem came when First General, through the underwriter, denied collision coverage for the accident, thus shifting the burden to pay for the destroyed vehicle to A & S, with no indemnification from First General.
After the demand for coverage under the policy went unheeded, Lend-Lease initiated the instant action claiming against A & S the value of the tractor; against Interstate (the underwriter), First General (the insurer) and Rimmer-Child (the agency), for the value of the tractor at the time of loss, plus towing and interest, and for $1,000,000.00 in punitive damages. The allegations of punitive damages were justified by the failure of the insurer, underwriter and agent to "without just cause or arguable reason, arbitrarily den(y) coverage and willfully refuse to pay Plaintiff's just claim."
The Defendants all filed general denials as answers. After discovery was had, motions for summary judgment were filed, as were responses and cross-motions for summary judgment.
After a hearing, the circuit court below ruled for Lend-Lease on the issue of liability on the underlying claim. That is, that First General owed Lend-Lease for the loss to Lend-Lease's Peterbilt tractor which was wrecked while in service with A & S Trucking. The circuit court ruled:
That the aforementioned Peterbilt was not a temporary substitute as defined under the liability portion of the policy of insurance in that same was never withdrawn from normal use as required under the terms of the policy of insurance.
That First General Insurance Company is liable to Plaintiff for the amount of damage done to the aforementioned Peterbilt under the terms of the policy of insurance.
On January 16, 1987, the issue of punitive damages was tested, as First General filed a motion for partial summary judgment on the issue of punitive damages. In July of 1987, Interstate (still a party at that time) likewise filed a motion for summary judgment, wishing to be dismissed for failure to state a claim, as did Rimmer-Child (the agent). The court below granted those motions, dismissing Interstate and Rimmer-Child. The dismissal was not appealed and those issues are not before us.
On August 10, 1987, the lower court granted First General's motion for partial summary judgment on the issue of punitive damages, precluding the recovery of any but contractual claims against First General. The lower court ruled that the policy of insurance was ambiguous and, because of the ambiguity, there being no prior cases in this jurisdiction on point, the court found no malice or reckless disregard in the denial of coverage and that a legitimate or arguable reason to deny coverage and litigate the issue existed, negating Lend-Lease's and A & S's claim for punitive damages.
Thereafter, a bench trial was held on the issue of additional damages, such as wrecker and storage fees, costs of court and pre-judgment interest. In his final order, the circuit judge ruled that Lend-Lease was entitled to a recovery against A & S and First General, jointly and severally, in the amount of $49,250.00 (A & S did not appeal this portion of the verdict as to the *1215 loss on the tractor). Recovery for towing and storage costs and prejudgment interest, medical expenses, attorneys' fees, lost profits, and other losses to A & S was denied.
The instant appeal followed.

DISCUSSION OF THE ISSUES
There is one overriding issue in this appeal. It is the issue raised by First General relating to the scope of coverage of its policy issued to A & S.
The trial judge is responsible for reviewing all the evidence before it in order to determine whether the issue of punitive damages should be submitted to the jury (or in this instance by the circuit judge as trier of fact). Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 269 (Miss. 1985). On appeal, this Court reviews the briefs and all recorded evidence to determine the propriety of the trial judge's decision regarding submission to the jury. Blue Cross & Blue Shield of Miss. v. Campbell, 466 So.2d 833, 842 (Miss. 1984). The highway we travel in deciding bad faith cases is a well-marked one. Mut. Life Ins. Co. of N.Y. v. Estate of Wesson, 517 So.2d 521, 527-528 (Miss. 1987); Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172 (Miss. 1990). Only when an insurer has acted with malice or gross negligence or reckless disregard for an insured's right is the imposition of punitive damages appropriate. Independent Life & Acc. Ins. Co. v. Peavy, 528 So.2d 1112, 1115 (Miss. 1988).
In the case sub judice, the denial of the claim by First General was based on the absence of coverage. Shortly after the accident which gave rise to the claim for the value of the Peterbilt tractor, First General paid, without question, a claim submitted under the liability portion of the policy it had issued to A & S. However, coverage was rejected under the collision portion of the policy. The difference lies in the wording of the two separate and distinct coverages, the risks covered (and thus assumed by the insurer).
First General, and indeed all parties to the suit, contend that the Peterbilt tractors (and other tractors) replaced the contracted-for Kenworth tractors. All parties agree that the lease contract between Lend-Lease and A & S called for three Kenworth tractors. The three Kenworth tractors had been used for five days, and then returned to Lend-Lease for work necessary to finally place the Kenworths in service with A & S. The three Kenworths were eventually, according to all parties, supposed to be returned to A & S and placed in service as the vehicles which were leased from Lend-Lease. The question becomes whether the "replacement" in contemplation and in actuality was "temporary" or permanent.
The liability portion of First General's policy defines "PERSONS INSURED" as:
a. the named insured;
b. any partner or executive officer thereof, but with respect to a temporary substitute automobile only while such automobile is being used in the business of the named insured;
c. any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured ...
Additionally, under the liability portion of the policy, we find the definition of a temporary substitute automobile:
"Temporary substitute automobile" means an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction;"
Keep in mind that the liability claim for injuries caused by the Peterbilt while leased to A & S was paid without question. The aforementioned clause mandates coverage for a temporary replacement when the question is one of liability for injuries to third parties. However, the physical damage (collision) portion of the policy defines the covered automobile as follows:
"covered automobile" means a land motor vehicle, trailer or semitrailer, including its equipment and other equipment *1216 permanently attached thereto (but not including robes, wearing apparel or personal effects), which is either:
(a) designated in the declarations, by description, as a covered automobile to which this insurance applies and is owned by the named insured; or
(b) if not so designated, such vehicle is newly acquired by the named insured during the policy period provided, however, that:
(i) it replaces a described covered automobile, or as of the date of its delivery this insurance applies to all covered automobiles, and
(ii) the named insured notifies the company within 30 days following such delivery date; ...
There is a distinct, recognized difference in a temporary substitute vehicle, under the terms of this policy, and a replacement vehicle. The temporary substitute vehicle is one which is being utilized by the insured, on a temporary basis, in place of an owned vehicle, when the owned vehicle has been withdrawn from service for reasons which will resolve eventually. An example would be the "loaner" car given to you when you take your car in to the dealer for servicing. Under generally accepted insurance theory, the liability coverage follows the insured while he or she is driving the temporary vehicle. The insured's vehicle is not being driven, so the insurer is covering only one vehicle at a time.
However, the insured's automobile still exists, even though it is being serviced, and is not being driven by him on a temporary basis. Were physical damage to occur to the insured's automobile in the above example, say, if the dealership's repair shop accidentally burned to the ground, coverage would still be provided under the physical damage provisions of the policy. Since the insured paid for coverage for one vehicle, and paid one premium for the single vehicle, First General argues that it would be unfair to force it to cover both the insured vehicle (the scheduled Kenworth, in the case sub judice), and the temporary replacement vehicle (the wrecked Peterbilt), under the physical damage portion of the policy.
Of course, under our theory of insurance law, and the plain wording of the policy, liability coverage followed A & S, and the liability portion of First General's policy, since it contained coverage for a temporary substitute, covered the liability claim for A & S's accident. Since coverage for physical damage still remained with the Kenworth, no physical damage coverage was present on the Peterbilt, the temporary substitute vehicle, and the physical damage claim was not paid.
A & S and Lend-Lease argue that the Peterbilt was a "replacement vehicle," and therefore should be covered. The definitions of "temporary substitute" and "replacement vehicle" have been factually and legally distinguished in a number of cases, although not in this jurisdiction.
In the case of Allstate Insurance Co. v. Johnson, 539 F. Supp. 421 (W.D.Ark. 1982); a policy of insurance issued by the plaintiff, Allstate, was held not to provide coverage under the terms of the policy, because the vehicle owned by the insured, and for which the insured was claiming coverage, was not a replacement vehicle within the definitions supplied by the policy itself.
The court ruled that the terms of the policy were plain and unambiguous, and that it clearly defined "owned automobile," "replacement automobile," "any additional automobile," and "any temporary substitute automobile." Further, the court factually distinguished the coverage allowed under the definitions of the policy and the coverage sought by Johnson. The automobile had been purchased, not by Mr. Johnson, but by Razorback Petroleum Corporation, even though Johnson drove the automobile as a replacement for his own which had been wrecked. It could not be a "replacement automobile" or a "temporary substitute." Finding that the automobile fit none of the coverage descriptions in the policy, the district court ruled that no coverage was afforded under the terms of the policy. This case demonstrates that the terms and conditions of a policy are to be given a plain meaning, and not enlarged to *1217 create coverage where none existed. It also illustrates that the definition of "replacement automobile" means just that, something that permanently replaces an automobile that is removed from service.
Another case which illustrates the difference between a "temporary substitute automobile" and a "replacement automobile" is Providence Washington Insurance Co. v. Hawkins, 340 S.W.2d 874 (Tex.Civ. App. 1960). This case is almost on all fours with the case sub judice. Fourteen tractors were being used on a construction job. They were scheduled and insured by make, model and serial number. The insured stated to his agent that "he wanted all fourteen tractors on the job insured." The agent assured the insured that all were. One of the tractors became disabled, and another tractor, one not scheduled on the policy, was substituted on the construction job. Subsequently, the unscheduled, substitute tractor sustained fire damage, and demand was made for payment of the loss under the physical damage portion of the policy. The lower court ruled that the oral representations of the agent, coupled with the stated purpose for entering into the contract (insuring all fourteen vehicles on the job site), made it clear that coverage was provided; that the tractor was a "replacement vehicle" within the meaning of the policy, and that coverage automatically attached for thirty days.
The Texas Court of Civil Appeals, however, reversed and rendered, ruling that the vehicle did not fit the definition of a "replacement vehicle" under the terms of the policy.
Illustrative of the "replacement automobile" definition utilized in the property damage portion of the automobile policy is Kelly v. State Farm Mutual Automobile Ins. Co., 256 F. Supp. 978 (E.D.Tenn. 1966). In Kelly, the district court construed the phrase "replacement automobile" to be in accord with the majority view in this country:
Plaintiffs say they "replaced" the Rambler when it was sold on December 6, and that their intention to do so was manifested on that date. Our Sixth Circuit Court of Appeals had before it very recently in Yenowine v. State Farm Mutual Automobile Ins. Co., 342 F.2d 957, 959, the same defendant, the same policy (with inconsequential verbal damages) and an involved situation with reference to a replacement automobile. The Court said:
"The courts which have interpreted this clause in insurance policies are generally in accord, as are we, with the following ruling as to what constitutes a replacement vehicle.
`* * * the replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or be incapable of further service at the time of the replacement.'"
The district court ruled for State Farm. See also, Yenowine v. State Farm Mutual Automobile Ins. Co., 342 F.2d 957 (6th Cir.1965).
The only case remotely on point in this jurisdiction is United States Fidelity & Guaranty Co. v. McRae & Co., 247 So.2d 699 (Miss. 1971). In the McRae case, the policy issued by USF & G provided physical damage coverage for "newly acquired automobiles" (replacement vehicles) if the new vehicle either replaced an automobile owned by a named insured and which automobile was covered by the policy, or if USF & G insured all the automobiles owned by the insured on the date of the replacement vehicle's delivery. Neither was the case, and this Court found for USF & G.
The vehicle totalled by A & S was not a "replacement vehicle" within the meaning of the policy of insurance issued by First General, since it was not intended to replace on a permanent basis the Kenworth tractor contracted for in the lease between A & S and Lend-Lease. The wrecked Peterbilt, the value of which Lend-Lease and A & S sought to recover from First General, was a temporary substitute, not a replacement vehicle. It would be inequitable to require coverage under the physical damage portion of the policy upon both the *1218 garaged Kenworth (which was to have been returned to service), and the wrecked Peterbilt. The liability portion clearly covers temporary substitutes. One must assume that the insurer charged and received a premium to insure the risk. On the other hand, the terms of the property damage portion of the policy clearly do not state that "temporary substitute" vehicles are covered.
First General was clearly in the right, and not acting with malice or reckless disregard when it denied coverage under the physical damage portion of its policy, because there simply is no claim. There being no underlying claim, there can be no wrong in denying it, and therefore no punitive damages.

CONCLUSION
A & S Trucking Company's appeal of the denial of punitive damages against First General Insurance Co. should be affirmed. The lower court's ruling in favor of Lend-Lease against First General on the underlying contractual claim should be reversed and rendered. And concerning Lend-Lease's appeal of the lower court's denial of punitive damages, pre-judgment interest and attorney fees, the lower court should be affirmed.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in part and dissents in part by separate written opinion.
DAN M. LEE, Presiding Justice, concurring in part, dissenting in part:

A.
I concur with the majority opinion insofar as it relates to punitive damages, attorneys' fees, prejudgment interest and partial summary judgment on the issues of bad faith and punitive damages. However, in my opinion the three Peterbilt trucks/tractors substituted in place of the Kenworths were covered by the policy. Since I would affirm the judgment of collision liability entered by the trial court, I must respectfully dissent.

B.
A & S entered into a lease agreement with Lend-Lease for three (3) Kenworth trucks. Lend-Lease's lease policy required liability and collision insurance on all its leased and rented trucks prior to actual lease or rental; A & S specifically added the three (3) Kenworth trucks it would be leasing to its already existing policy of insurance. Lend-Lease then took possession of the Kenworth trucks for lease preparation and rented A & S three (3) Peterbilts in their stead. Thereafter, in keeping with its policy of requiring insurance, Lend-Lease personally contacted A & S's insurance company and required the following language to be included on A & S's Certificate of Insurance in the block entitled "Of Operations/Locations/Vehicles": "In Respect to all vehicles lease[d] and rented."
As providence would have it, one of the rented/substituted Peterbilt trucks was destroyed in an accident. A & S's insurance company, First General, denied collision, or property damage, coverage based on the following policy terms: "Temporary substitute automobile" and "replacement automobile". After trial, the circuit court found that the Peterbilt was covered under the policy and entered monetary judgment. The majority now reverses this decision, stating there was no collision coverage on the Peterbilt on the basis of the terms "temporary substitute automobile" and "replacement automobile."
The logic of the majority opinion is not only an exercise in semantics, it recognizes form over substance. Under the majority opinion, A & S obtained, and paid for, insurance coverage on trucks not in its possession nor operation, but had no insurance coverage on the vehicles which were in actual possession and use. At this point I am compelled to point out that the existence of insurance covering the Kenworth *1219 trucks was never an issue in this case; the sole issue was the insurance coverage, if any, afforded the destroyed Peterbilt. In my opinion, therefore, the outcome reached by the majority is simply unrealistic. It matters not what term you use to describe the status of the destroyed Peterbilt truck  the facts clearly show what actually happened and the intent of the parties: while Lend-Lease had possession of and readied the Kenworths for operation, A & S rented from Lend-Lease the destroyed Peterbilt on a temporary basis in the stead of the Kenworth. Based on these facts, it is my opinion that the Peterbilt, as a temporarily substituted vehicle, was covered by A & S's policy of insurance for collision, or property damage.
The situation in this case is akin to what happens during a football game. For example, when Ole Miss substitutes Shows for Luke, Luke must leave the field; indeed, they would be penalized if both were left in because too many players would be on the field. In that respect, I agree that coverage cannot be extended simultaneously to both the Kenworths and the Peterbilts  to do so would penalize the insurance company, for it had contracted to insure the Lend-Lease vehicle[s] in the possession and use of A & S. Under the majority's analysis we are denying coverage of the substituted Peterbilt truck which was in actual possession and use and finding coverage on the Kenworth trucks which were taken out of service.
I think that the term "temporary substitute" under these facts can only mean that the Kenworths were temporarily excluded from the policy and the Peterbilts were temporarily included. My conclusion best interprets the facts regarding which vehicles were covered and prevents confusion of non-lawyers and non-insurance trained public consumers who, I dare say, will not understand how in the same policy the term "substitute vehicle" will allow the payment of a liability [personal injury] claim, but preclude the payment of a collision [property damage] claim.