Country Mutual Insurance Company, an Insurance Corporation, Plaintiff-Appellant, v. Donald Murray, Jr., et al., Defendants-Appellees.

Lucille V. Leonardson, Counterplaintiff-Appellee, v. Country Mutual Insurance Company, an Insurance Corporation, Counterdefendant-Appellant.

William Leuellen, Ila Leuellen, Counterplaintiffs-Appellees, and Charles Shepard, Jr., Counterplaintiff-Appellant, v. Country Mutual Insurance Company, an Insurance Corporation, Counterdefendant-Appellee.

Gen. No. 67–165.

Second Judicial District.

August 8, 1968.

Maynard, Maynard & Brassfield, of Rockford, for appellant.

Barrick, Jackson & Switzer, Miller, Hickey, Collins, Gilbert & Powers, and North, North & Ohlson, of Rockford, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Country Mutual Insurance Company, plaintiff, appeals from an adverse judgment on its complaint for a declaratory judgment to determine coverage under an automobile liability policy. It further appeals from judgment on counterclaims, requiring it to pay a personal injury judgment of Lucille V. Leonardson previously secured against Charles Shepard, Jr., and medical payments under the policy, and to defend Shepard in a second personal injury suit brought by Donald Murray, Jr. arising out of the same accident. Shepard has also appealed from a judgment by the trial court denying reimbursement for costs of defense of the Leonardson suit.

There is evidence that William Leuellen and Ila Leuellen, husband and wife, resided at Davis Junction, Illinois. In April, 1963, they were the owners of a 1962 Ford which they insured for liability with the Country Mutual Insurance Company. The certificate of title to this vehicle was held by C. I. T. Finance Company, through whom they had financed its purchase. A disability policy was written in conjunction therewith, providing for payment of installments due in the event of physical disability of William Leuellen. The automobile liability policy lapsed because of nonpayment of premium. During the year 1964 William Leuellen went on public aid as a result

64

of physical disability. The disability policy thereafter paid the loan installments.

In December, 1964, the Leuellens insured a 1954 Ford with Country Mutual. Being a recipient of public aid, William Leuellen was not allowed to drive a vehicle worth more than $400, and the value of the 1962 Ford which they still owned obviously exceeded this limitation. Consequently, the 1962 Ford was garaged, and was not driven by the Leuellens.

Charles Shepard, Jr., a son of Ila Leuellen, resided in Rockford, Illinois. In early February, 1965, he purchased a 1957 Ford from a dealer in Rockford, and financed this purchase through General Finance Loan Corporation, which thereafter retained the certificate of title to this car.

At the trial, evidence was introduced concerning an oral agreement then made between Shepard and the Leuellens whereby Shepard purchased the Leuellens' 1962 Ford, and as a down payment delivered his 1957 Ford to the Leuellens. The balance of $1,200 was to be paid at the rate of $65 per month.

Shepard took possession of the 1962 Ford and operated it thereafter in and about Rockford, Illinois. He made two monthly payments of $65 to the Leuellens in March and April of 1965.

The Leuellens had disposed of their 1954 Ford, and on February 11, 1965, secured a transfer of insurance from that vehicle to the 1957 Ford. The transfer application reflected the purchase date on the 1957 Ford to have been February 4, 1965, and in a space provided under the heading, "In whose name is title issued" there was inserted the word "insured." The transfer application was signed by William Leuellen. Mrs. Leuellen then operated the 1957 Ford around Davis Junction.

Neither Shepard nor the Leuellens notified the Secretary of State concerning the transactions described above. The certificate of title to the 1962 Ford remained in the

possession of C. I. T. Finance Company and reflected the titleholder to be Leuellen. The disability carrier continued to pay the monthly finance installment thereon. The terms of the disability insurance contract were not introduced into evidence however. At the same time General Finance Corporation retained the certificate of title to the 1957 Ford which continued to list Shepard as titleholder.

On or about April 12, 1965, the motor in the 1957 Ford broke down. Mrs. Leuellen contacted Shepard and asked to rescind the agreement. Shepard agreed and the 1962 Ford was allegedly returned to Davis Junction and thereafter used by Mrs. Leuellen. The 1957 Ford was towed to Rockford, where Shepard tore it down for repairs. It was in this inoperative state on April 24, 1965.

On this latter date, Shepard was driven to Davis Junction, where he visited his mother, Mrs. Leuellen. There he borrowed the 1962 Ford and later that evening was involved in a serious collision while driving this vehicle.

Later, on April 28, 1965, Mrs. Leuellen sought to secure a transfer of insurance from the 1957 Ford to the 1962 Ford. Notice of the accident was first given to Country Mutual on May 5, 1965.

On May 7, 1965, Shepard and the Leuellens gave a signed statement to the insurance company, detailing the series of transactions related above, as well as Shepard's account of the occurrence of April 24, 1965. Shepard's statement included an admission that he "hadn't returned the 1962 Ford to mother yet when the accident occurred" which plaintiffs urged as impeachment of his trial testimony that the 1962 Ford was not in his possession and control at the time of the accident.

In that accident, Lucille Leonardson had been an occupant in the car Shepard was driving, and sustained severe injuries in the collision between her host's car and one driven by Donald Murray, Jr.

She brought suit against Charles Shepard, Jr., and on October 25, 1966, her complaint was served on Shepard. The complaint contained an allegation that Shepard was driving the 1962 Ford with the permission of its owners, William Leuellen and Ila Leuellen. Country Mutual refused Shepard's tendered defense of this personal injury suit.

On January 27, 1967, Country Mutual filed a suit for declaratory judgment against Donald Murray, Jr., Lucille V. Leonardson, William Leuellen, Ila Leuellen and Charles Shepard, Jr. Therein it sought to be relieved of (1) any duty to defend the Leonardson action against Shepard, (2) its obligation to pay any judgment rendered in that suit against Shepard, (3) any obligation under the policy with reference to the claim of Donald Murray, Jr.

While the declaratory judgment suit was pending, the personal injury action of Lucille Leonardson reached trial stage. Shepard, defended by his personally employed attorneys, was found guilty of wilful and wanton misconduct and a verdict for $25,000 in favor of the plaintiff, Lucille Leonardson, and against Shepard was awarded by the jury.

Thereafter, Country Mutual's original declaratory judgment action was expanded to include a counterclaim wherein Lucille Leonardson then sought to compel Country Mutual to pay the judgment she had secured against Shepard, plus a claim for medical bills submitted under the medical payment portion of the policy. Country Mutual's motion to dismiss this counterclaim was denied, as was a similar motion directed at a counterclaim filed by the Leuellens and Shepard, asking that Country Mutual reimburse Shepard for attorneys' fees he incurred in defending the suit brought by Lucille Leonardson.

All counterclaimants subsequently filed motions for summary judgment, and these motions were denied. The

series of actions and cross actions were then tried by the court, sitting without a jury, resulting in the entry of the orders and judgments from which these appeals have been taken.

A motion of Lucille Leonardson seeking reimbursement for printing costs occasioned by the appeal was ordered by this court to be taken with the case, together with the motion in opposition thereto.

In dispute is the application of the portion of the Leuellen policy which provides:

> "3. AUTOMATIC INSURANCE ON NEWLY PUR-
> CHASED AUTOMOBILES
>
> "If the automobile described in the Declarations is disposed of and another acquired in its place by the Named Insured, this policy shall without notice transfer to the newly acquired automobile.
>
> · · · · ·
>
> "The terms of the two preceding paragraphs apply provided notice of delivery of such automobile to the Named Insured or spouse is given to the Company within the policy period then current or, if delivery is less than thirty (30) days prior to the end of such period, then within thirty (30) days after delivery. . . ."

I

The first point we have considered is Country Mutual's contention that the counterclaims of Leonardson, Shepard and the Leuellens should have been dismissed by the trial court. The record discloses that Leonardson's initial responsive pleading to Country Mutual's declaratory action was an answer denying the insurer's prayer for declaratory relief. After her personal injury claim against Shepard had been reduced to judgment, she sought and was

68

granted leave to file her counterclaim seeking judgment for the money damages awarded to her in the common-law suit. Shepard, following his unsuccessful defense of the personal injury suit, filed his counterclaim for his attorneys' fees in defending that action.

██ Plaintiff argues that the Declaratory Judgment Act prescribes the only manner in which the court may act in this situation. This statute provides:

> "If further relief based upon a declaration of right becomes necessary or proper after the declaration has been made, application may be made by petition to any court having jurisdiction for an order directed to any party or parties whose rights have been determined by the declaration to show cause why the further relief should not be granted forthwith, upon reasonable notice prescribed by the court in its order." (Ill Rev Stats 1965, c 110, § 57.1(3).)

Thus, it reasons, the court's singular interest is limited to deciding the existence or nonexistence of insurance coverage, and if this decision favors Leonardson and/or Shepard, then ancillary petitions for coercive relief (as contained in their respective counterclaims) could be filed.

██ We do not regard this statute as dictating the only procedure that may be employed. It was within the sound discretion of the court to allow the use of counterclaims as in any action. Ill Rev Stats 1965, c 110, § 38. In our opinion, the Declaratory Judgment Act merely establishes an available procedure, but does not prohibit any other reasonable approach provided in the Civil Practice Act which serves to place the issues before the court.

Burgard v. Mascoutah Lumber Co., 6 Ill App2d 210, 218, 219, 127 NE2d 464 (1955), simply holds that no counterclaim is *necessary* to allow coercive relief on the part of the party opposing the declaratory action. Relief may be had by petition after a decision in the original

action is announced. The case does not stand for the proposition that a counterclaim is prohibited.

Nor can State Farm Mut. Auto Ins. Co. v. Mohan, 85 Ill App2d 10, 22, 228 NE2d 283 (1967), be said to support the plaintiff's position. Therein, the personal injury action was unresolved, and it would have been improper to grant relief with respect to such unresolved issues.

## II

Counterplaintiffs Leonardson and Shepard urge that they were entitled to a summary judgment, on the basis of the rulings in Sims v. Illinois Nat. Cas. Co. of Springfield, 43 Ill App2d 184, 193 NE2d 123 (1963), and McFadyen v. North River Ins. Co., 62 Ill App2d 164, 209 NE2d 833 (1965). Both cases acknowledge the obligation of an insurer to defend an action brought against its insured where the complaint in that action *potentially* sets forth a situation which would be covered by the policy. Under the premise that the duty to defend is broader than the duty to pay, the court looked to the "four corners" of the complaint, refusing to allow the carrier an avoidance of its obligation to defend, for reasons not reflected in the complaint itself.

In Sims, the complaint against the insured, alleged a host-passenger relationship, and a prayer for damages springing from the tortious conduct of the host driver. The company had reason to believe the passenger was an employee of their insured, defendant Sims, and, as such, his claim would be excluded under the policy terms and conditions. The refusal to defend was based upon knowledge possessed by the insurance carrier which was entirely outside of the complaint.

A similar situation existed in McFadyen, wherein the company claimed its "insured" operated a business on the insured premises, while the policy covered only residence hazards. They refused to defend the suit,

choosing rather to contest the garnishment action later. The court held the unjustified refusal to defend estopped it from raising this defense in the ancillary proceeding. The decision in each case illustrates the principle that:

> "The insurer's duty to defend is predicated not upon information in its possession which indicates or even proves noncoverage. Rather, it is predicated upon the allegations in the complaint in an action brought against the insured and when such allegations state facts which bring the case within, or potentially within, the coverage of the policy, the insurer is from this time on unjustified in not defending the insured." McFadyen v. North River Ins. Co., supra, at pages 170, 171.

Thus, in each instance, it becomes necessary to review the content of the complaint, and, if taken at face value, it is found to allege a cause of action which the policy is designed to cover, the company is then compelled to defend its insured, or, as Sims and McFadyen explain, seek a declaratory judgment as to its obligations and rights *or* defend under a reservation of rights.

Country Mutual's amended policy of February 11, 1965, listed William Leuellen and/or Ila Leuellen as its named insured. It provided liability and medical payment coverage, and the automobile designated as the insured vehicle was a 1957 Ford. The policy contained the usual "omnibus" clause, as well as the standard provision that an "insured" includes any person other than the Named Insured, provided the actual use of the insured vehicle is with the permission of the Named Insured.

Looking now to the complaint, the essential elements pertinent to this inquiry recite:

> "Defendant Charles Shepard, Jr., was operating a 1962 Ford automobile with the permission of its owners, William Leuellen and Ila Leuellen, . . . ."

Charles Shepard, Jr., is not a "named insured" under the Leuellen policy. He may be an "insured," depending on the factual situation. Under the facts before us, *permission* to use the Named Insured's vehicle could entitle him to coverage. Shepard, a stranger to the insurance contract, was presented to Country Mutual by the Leuellens as their permittee, seeking a defense under his permittor's policy. He, in reality, was a potential insured.

Although the fact of permission is alleged in the complaint, we nonetheless regard its inclusion therein as immaterial. Permission in no way affects the plaintiff Leonardson's recovery rights for personal injury against Shepard. We do not feel the draftsman of the plaintiff's personal injury complaint should be the arbiter of the policy's coverage. For the purpose of this decision, we consider the allegation to be superfluous and accord it no weight.

Similarly, by the policy terms the 1962 Ford might be covered. Coverage is neither negatived nor confirmed by the face of the complaint. It too, however, may be *potentially* covered, as a newly acquired automobile.

As a general rule, unless the complaint affirmatively alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and imposes on the carrier certain obligations. Country Mutual contends that it fulfilled these obligations by the mere filing of the declaratory judgment suit, contesting the existence of coverage for Shepard. It thereby claims to have adequately preserved its right to assert noncoverage, after it refused to defend Shepard and judgment was entered against him.

Leonardson and Shepard contend that Country Mutual's refusal to defend was unjustified, for it failed to judicially determine its coverage position prior to breaching the insurance contract. In effect, the rule they seek to apply would require Country Mutual to *secure* a declaratory judgment determination as to its obligations

and rights *or* defend Shepard under a reservation of rights, if they wish to avoid estoppel by reason of their failure to defend.

■ We believe the latter position expresses the correct rule in a situation where the personal injury action reaches judgment before the declaratory judgment action achieves fruition and finality. In a case in which the policy is designed to cover the type of claim involved, wherein an insurer is presented with a claim that may or may not be covered by the policy, if the carrier refuses to provide its insured an unrestricted defense, yet desires to ultimately urge exclusionary coverage defenses, it must;

(1) *Secure* a declaratory judgment of its rights and obligations, while defending its potential insured on a reservation of rights, or

(2) Defend its potential insured on a reservation of rights and adjudicate its coverage in a supplemental suit. If it elects to defend under a reservation of rights, it must continue such defense until there is a final determination that the claim is not covered by the policy. If and when that becomes certain the insurer may turn back the defense. Firco, Inc. v. Fireman's Fund Ins. Co., 173 Cal App2d 524, 343 P2d 311, 313 (1959) ; Fireman's Fund Ins. Co. v. Chasson, 207 Cal App2d 801, 24 Cal Rptr 726, 729 (1962) ; General Ins. Co. of America v. Whitmore, 235 Cal App2d 670, 45 Cal Rptr 556, 560 (1965).

The trial court should, however, exercise its sound discretion in controlling the course of the declaratory judgment action and the personal injury suit if trial preference is sought by either party.

■ We hold that the trial court should have granted the summary relief prayed for by Leonardson and Shepard, inasmuch as Country Mutual unjustifiably breached its policy in refusing to defend Shepard in the Leonardson injury action. It was therefore estopped from raising

73

the exclusionary defenses it urged in its declaratory action.

## III

In view of our holding that Leonardson, Shepard and Leuellens were entitled to summary judgment, it is apparent that the portion of the appeal attacking the entry of judgment after trial of the facts in the trial court now has application only to the claim of Donald Murray.

Country Mutual had not breached any duty to defend Shepard with respect to the claim of Donald Murray. Therefore, they were not estopped from raising a policy defense. With respect thereto, the theory that coverage existed under the Country Mutual policy to cover permittee Shepard while driving the 1962 Ford on April 24, 1965, was initially based on three coverage provisions. However, there seems to be no question but that the issue is limited as to whether the 1962 Ford is a "newly acquired" vehicle within the terms and definitions of the policy as interpreted by case law.

██ Country Mutual has not requested a new trial but has simply applied to this court to reverse the judgment of the trial court. The rule to be applied therefore, is that which applies to the direction of a verdict at trial court level, or the granting of a judgment n. o. v. This rule, commonly referred to as the Pedrick rule, states:

> ". . . verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967).

In light thereof, we have considered the entire evidence in its aspects most favorable to Murray.

■ ■ We do not construe the Leuellens' attempted application for transfer of coverage from the 1957 Ford to the 1962 Ford on April 28, 1965, to be vital or relevant to the question of coverage, except, insofar as the trier of fact may have felt it affected the credibility of the person so acting. The fact of replacement here would suffice to extend coverage during the term of the policy without notice. In this respect, the trial judge obviously determined that the testimony of the Leuellens and Shepard was worthy of belief. Ownership testimony was based primarily on the oral transactions with which only the Leuellens and Shepard were familiar. We concede, as plaintiff claims, that there is room for doubt as to the veracity of testimony in interfamily dealings, such as evolved in this case. However, unless the decision rendered by a court, sitting without a jury, is clearly wrong, we will not upset its factual determination. It is the province of the trial judge, hearing the case without a jury, to determine the credibility of the witnesses and the weight to be given their testimony, and his judgment will not be disturbed unless manifestly contrary to the weight of the evidence. Hall v. Illinois Nat. Ins. Co., 34 Ill App2d 167, 173, 180 NE2d 695 (1962). If substantially true, the testimony of the Leuellens and Shepard provides a sufficient factual basis for the court to decide that the 1962 Ford falls within the "newly acquired" provision of the contract.

Plaintiff argues that the evidence clearly discloses that the ownership of the 1962 Ford remained in the Leuellens at all times and was therefore not a "newly acquired" vehicle. Conversely they argue that the evidence shows that title to the 1957 Ford remained in Shepard at all times, disputing the validity of the claimed transfers. Plaintiff deems the fact that the registered title to the 1957 Ford always remained in Shepard while the registered title to the 1962 Ford always remained in the Leuellens to be conclusive under the circumstances.

The case of General Acc. Fire & Life Assur. Corp., Ltd. v. Lindenmier, 16 Ill App2d 585, 149 NE2d 343 (1958), dealt with a gift of a vehicle by father to son. Therein the insurer contended that the evidence was naught but a family story of convenience. Because we believe that decision parallels the instant case, we will review the case briefly.

Lindenmier, Jr. insured a 1948 Ford for a period from August 10, 1954, to August 10, 1955. His father, with whom he resided, owned two cars, one a 1950 BelAir. In July, 1954, the 1948 Ford had "conked out" and Jr. stored it in his father's backyard. On December 2, 1954, the father gave his son the 1950 BelAir, and on December 18, 1954, Lindenmier, Jr. was involved in an accident with the BelAir. The certificate of title to the Chevrolet on the date of the gift was in the possession of the local finance company which held the lien. This was the explanation given for failure of the father at that time to assign the title to the son. Further, the father testified there was a loan on the car and that his son was to pay off this loan by making payments to the father and the father, in turn, was to pay the money to the finance company which held the lien on the car.

The trial court held that there had been a gift of the BelAir by father to son on December 2, 1954, and that, regardless of the fact that the first notice to the insurer of accident and/or request to transfer coverage from the 1948 Ford to the 1950 BelAir was on December 20, 1954, nonetheless, the 30-day period of automatic coverage applied if there had been an actual gift with intent to pass title.

In determining whether a gift has actually been made, the court recognized the controlling fact to be the delivery of the subject matter of the gift by the donor to the donee with the intent to pass title. (Citing Rothwell v. Taylor, 303 Ill 226, 135 NE 419; Estate of Williams v. Tuch, 313 Ill App 230, 39 NE2d 695.) The appellate

tribunal decided there was sufficient evidence to warrant the trial court finding that this gift had passed title to the car.

To the same effect is the holding in Mullen v. Farm Bureau of LaSalle County, 21 Ill App2d 280, 285, 157 NE2d 679 (1959), wherein the court states:

> "The time of passing of title of an automobile sold is a question of the intention of the parties, . . . and in regard to the sale of personal property the title is transferred from the seller to the buyer at such time as the parties to the contract intend it to be transferred, . . . ."

We feel there was sufficient evidence before the trial court to manifest the intent of the Leuellens to transfer title to the 1957 Ford to Shepard on February 4, 1965. The delivery of the vehicles plus Leuellen's transfer of coverage bespeaks their intention, and rather than detracting from Leuellens' position, we feel the application for coverage supports his contention that they had owned the 1957 Ford on that date.

The evidence in this record as to the ownership of the 1962 Ford is not without conflict. Nonetheless, the trial judge must look to all indicia of ownership, and the registry of title is not conclusive.

> "To ascertain the true owner of the vehicle it is not sufficient to discover who is the registered owner." Government Employees Ins. Co. v. Dennis, 65 Ill App2d 365, 372, 212 NE2d 759 (1965).

Later, when the parties saw fit to rescind the transaction, there was a sufficient basis in the evidence for the trier of fact to conclude that the Leuellens repurchased the 1962 Ford on April 12, 1964.

We have found no case which deals with the precise problem of whether, during a specific policy period, ownership of an uninsured second car may be divested

and thereafter reacquired, so as to construe the vehicle to be a "newly acquired" car within the meaning of the insurance contract.

Although the caption of the subject paragraph of the policy employs the words "newly purchased" automobiles, the terms of the contract recite:

> "If the automobile described in the Declarations is disposed of and another acquired in its place by the Named Insured, this policy shall without notice transfer to the newly acquired automobile. . . ."

■■■■ As stated in Thompson v. State Automobile Mut. Ins. Co., 122 W Va 551, 11 SE2d 849, at page 852 (1940) :

> ". . . A caption should never of itself be taken to override the intention of the parties to an insurance policy as shown by the provisions and clauses inserted thereunder. . . ."

We therefore consider this matter in the light of the word "acquired."

Virtually all cases on this point hold that "acquisition" must occur during the policy period. A leading case on point, Lynam v. Employers' Liability Assur. Corp. (DC Del 1963, 218 F Supp 383, contains a comprehensive survey of the authorities, and holds at page 385:

> ". . . The only times when a vehicle may come within the Newly Acquired Automobile Clause are (1) when a vehicle is acquired which in fact is a replacement and the owner discards the old vehicle, (2) when the old vehicle is retained but is not in working condition. The new vehicle must also be acquired after the issuance of the policy."

("Discard" and "Dispose" are used interchangeably. See Kelly v. State Farm Mut. Automobile Ins. Co., 256 F Supp 978, 981 (1966).)

Concededly, many cases hold that a vehicle already owned by the insured before the policy was issued is not "newly acquired" under that provision. See Marquez v. Dairyland Mut. Ins. Co., 78 NM 269, 430 P2d 766, 768 (1967) ; 12 Couch, Insurance, § 45:193 (2nd Ed 1964). However, without exception, we have found in each reported instance that the insured owned the car prior to the commencement of the policy period, and up to the date it replaced the insured vehicle.

██ ██ The facts of the instant case are unique in that the named insured, during a single-policy period, held three distinct positions with respect to this car. They owned it as of December, 1964, divested themselves of legal ownership and possession in February, 1965, and again became its owners according to the finding of the trial court in April, 1965, in turn disposing of the 1957 Ford. We hold this determination was adequately supported by the evidence in the record. Conflicting interpretations may be drawn, but as we have indicated, we rely upon the trial judge to rule upon the evidence which is credibly presented, and, unless he is patently wrong, we will not disturb his findings. Nor can we perceive any valid reason to limit the term "acquisition" to a vehicle which had *never* been previously owned.

IV

Accordingly, we hold that Country Mutual's policy of insurance covered the admitted permittee, Shepard, on April 24, 1965, when he was driving the 1962 Ford then owned by Leuellen. We further hold that the trial court could properly have found from the evidence that the Leuellens had acquired this vehicle approximately 12 days earlier, as replacement for the 1957 Ford which had been the vehicle insured under the said policy.

We therefore affirm the decision of the trial court which (a) obliges Country Mutual to provide coverage

to Charles Shepard as respects the Donald Murray, Jr. accident, (b) entered judgment in favor of Lucille V. Leonardson and against Country Mutual Insurance Company for $25,000 and costs and interest to satisfy the verdict entered in the case of William Leuellen and Ila Leuellen v. Charles Shepard, Jr., (c) entered judgment in favor of William Luellen and Ila Leuellen and against Country Mutual Insurance Company for $3,168.35, being the amount due under medical pay coverage, plus costs of suit. While, as we have previously stated, the trial court should have granted the summary judgment in behalf of these parties, the result of the declaratory judgment makes this failure of no effect as to the ultimate rights of the parties.

## V

We deny the motion of William Leuellen and Ila Leuellen seeking reimbursement for printing costs occasioned by the appeal, as we are of the opinion that the abstract prepared by the appellant both adequately and fairly presented the record to be considered on appeal.

## VI

Lastly, counterplaintiff Shepard sued for the attorney's fees incurred in the defense of the Leonardson common-law action. On the premise that this application for fees was governed by Ill Rev Stats 1965, c 73, § 767, the trial judge found Country Mutual's declination and denial to not be vexatious. Accordingly, he denied the prayer for fees. We agree that the insurer's actions were not vexatious but we believe the premise upon which the ruling was based to be erroneous.

The obligation to defend, in view of our holding above, carries with it the concomitant duty to compensate the insured for all damages, including costs of defense he

was forced to incur when the facts ultimately establish the company's duty to defend. Gould v. Country Mut. Cas. Co., 37 Ill App2d 265, 289–290, 185 NE2d 603 (1962); Freed v. Travelers, 300 F2d 395, 399 (CA 7th, 1962). This is based on breach of insurer's contractual duties and is an entirely different obligation than that imposed by section 767, supra.

That part of the judgment order denying Shepard fees and costs incurred in the defense of the common law action of Leonardson against Shepard, is reversed and remanded for a hearing to determine the amount of said fees and costs. This amount is limited to the defense of the common-law action, and does not include fees for vexatious delay nor such fees as were incurred in the prosecution of the declaratory judgment defense and counterclaim, nor in this appeal.

Affirmed in part, reversed in part, and remanded with directions.

DAVIS and MORAN, JJ., concur.