MARILYN REIS, Plaintiff-Appellant, *v.* AETNA CASUALTY AND SURETY COMPANY OF ILLINOIS, Defendant-Appellee.

First District (4th Division)   No. 77-984

Opinion filed November 30, 1978.—Supplemental opinion filed on denial of rehearing March 22, 1979.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Edward G. Wierzbicki, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, and Edward J. Zulkey, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The issue in this case is whether a homeowner's insurer can refuse to defend its insured merely because part of the conduct complained of in the tort complaint allegedly occurred on business property and the policy excludes liability for injuries arising out of business pursuits of any insured, except activities ordinarily incident to nonbusiness activities. We hold that in light of the specific allegations of the tort complaint, the insurer was required to defend and, having failed to do so, cannot now deny coverage. We also hold that any ruling as to the insurer's liability for that amount of the judgment exceeding the policy limits was premature as the facts had not been fully developed. That issue may, however, now be moot. We remand for a determination of the amount of the damages.

On August 14, 1974, Ricky Wummel, as administrator of the estate of Clarence H. Wummel II, filed a suit against Harmony Machine Resource, Inc., Marilyn Reis, and Robert Aldal. The complaint alleged that Marilyn Reis was an officer and employee of Harmony, that Aldal was also an employee of Harmony, that Aldal was also Douglas Phillips' supervisor; that on October 7, 1970, prior to reporting to work at Harmony, Phillips consumed a quantity of alcoholic beverages and prescription medications at Marilyn Reis' home; that when Phillips reported to work, he was intoxicated and incapable of operating machinery or driving an automobile and that Aldal and Reis knew or ought to have known this and, that after Phillips arrived at Harmony's premises, Harmony, through Aldal and Reis:

> 1. Carelessly and negligently undertook to treat the said Douglas W. Phillips for his condition of intoxication;
> 2. Carelessly and negligently offered medication to the said Douglas W. Phillips;
> 3. Carelessly and negligently offered medication to the said Douglas W. Phillips, which medication aggravated the physical condition of the said Douglas W. Phillips;
> 4. Carelessly and negligently offered sleeping pills for which a prescription was necessary to the said Douglas W. Phillips;
> 5. Carelessly and negligently ordered the said Douglas W. Phillips to leave the premises of Harmony Machine and to drive his automobile back to his home;
> 6. Carelessly and negligently allowed the said Douglas W. Phillips

to leave the premises in a condition of intoxication which was dangerous to other individuals in the area of the Harmony Machine premises and other individuals using the public thoroughfares in the area of the Harmony Machine premises;

7. Carelessly and negligently ordered the said Douglas W. Phillips to return to his home, knowing that his condition of intoxication made his driving of his car a danger to other motorists and individuals;

8. Otherwise carelessly and negligently caused an accident in which the automobile driven by Douglas W. Phillips collided with an automobile driven by the plaintiff's decedent, Clarence H. Wummell II.

After Phillips left the premises, he had an automobile accident in which plaintiff's decedent was killed.

Harmony Machines Inc. was insured by Crum and Forster Insurance Companies which had issued a workmen's compensation and employers' liability policy providing $100,000 for each accident. It does not appear from the record whether this policy protected Marilyn Reis in her capacity as officer of Harmony. Certainly, it did not protect her in her individual capacity. Crum and Forster on September 13, 1974, filed an appearance in the suit on behalf of the corporation and Reis. On September 18, 1974, Richard B. Harty also filed an appearance on behalf of Reis and Aldal.

■■ Marilyn Reis was personally insured under an apartment owner's policy issued by Aetna Casualty and Surety Company in the amount of $50,000 per occurrence. Shortly after suit was filed, Reis sent a copy of the complaint to Aetna; this apparently was the first notice of the accident given to that insurer. On October 4, 1974, Aetna answered, agreeing to file an appearance temporarily on her behalf as additional counsel,[1] but reserving its right to deny coverage because (1) notice had not been promptly given as required by the policy (this contention has not been pursued); (2) it was questionable whether an "occurrence" as defined in the policy was alleged in the complaint (this contention also was later dropped) and (3) the policy did not provide coverage since it excluded bodily injury arising out of business pursuits. Aetna, in the letter, also pointed out that the *ad damnum* was for $1,175,000 more than the policy coverage and that she had already retained Harty to represent her excess

---

[1] While it is not material in this case, it must be noted that the insurer is in error in its persistent contention that the attorney it retained acted only as "additional counsel." Assuming that it had any right and duty to defend at all, it had a duty to act for Reis as *the* counsel, directing the conduct of the case and handling settlement negotiations, etc. While Reis had a right to employ separate counsel because the *ad damnum* exceeded the policy limits, that attorney could act only as "additional counsel" until Aetna finally refused to defend.

claim. No objection of any kind was made to the fact that Harty had entered an appearance on her behalf before Aetna was notified.

On February 28, 1975, after participating in certain depositions and in the defense of the case up until that point, Aetna sent Reis a letter denying all liability on the sole ground that the business pursuit exclusion precluded any coverage for the lawsuit. Aetna in that letter stated that its denial was based on the complaint filed by plaintiff and that if the complaint was thereafter amended Aetna would reconsider the question. The attorney retained by Aetna then withdrew from the case. Aetna did not, however, file a declaratory judgment action to determine the question of coverage. Crum and Forster's attorney and Harty continued as defense attorneys. A judgment was rendered against all three defendants for $350,000. This was reduced by the trial court to $250,000 because of a $100,000 payment by Phillips. At that point Reis filed the present suit for declaratory judgment, contending that coverage did exist under the policy, and demanding, in count I, that Aetna pay the expenses of defense including those on appeal, post an appeal bond for the appeal of the tort judgment, pay the attorneys' fees incurred in the declaratory judgment action, and pay the full amount of the judgment, including costs and interest. The trial court, finding no coverage, granted summary judgment to Aetna and found there was no reason to delay appeal.

Reis appealed the adverse judgment in the instant case. All three defendants had also appealed the adverse judgment in the underlying tort action. After oral argument was heard by the court in the instant case, the Appellate Court for the Second District, by a Rule 23 Order (Ill. Rev. Stat. 1977, ch. 110A, par. 23), reversed the judgment for Wummel in the tort action, finding, as a matter of law, that none of the defendants breached any duty owed to the deceased. The second district's action, however, does not render the present action moot, both because that decision is still subject to review by the supreme court and because, even if there is no appeal or that decision is affirmed, if Aetna was required to defend Reis, then, as discussed later in this opinion, it is liable for the cost of defense.

## I.

■■■ In Illinois, a liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is completed before contesting the question of coverage. In a case where there is potential coverage so that the insurer has a duty to defend, but the insurer believes that it has a valid exclusionary defense, it must either (1) secure a declaratory judgment as to its rights and obligations before or pending trial of the original tort action or (2) defend the tort action under a reservation of rights. (*Thornton v. Paul* (1977), 51

Ill. App. 3d 337, 366 N.E.2d 1048; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, *appeal denied* (1976), 63 Ill. 2d 556; *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 274 N.E.2d 614, *appeal denied* (1972), 49 Ill. 2d 575; *Palmer v. Sunberg* (1966), 71 Ill. App. 2d 22, 217 N.E.2d 463, *appeal denied* (1966), 34 Ill. 2d 631; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) Where a duty to defend exists, but the insurer fails to take either course of action, its failure to defend is unjustified, and in a subsequent action by the insured against it, it is barred from disputing the questions of coverage. (*Associated Indemnity Co. v. Insurance Co. of North America* (1978), 68 Ill. App. 3d 807, 386 N.E.2d 529; *Thornton v. Paul* (1977), 51 Ill. App. 3d 337, 366 N.E.2d 1048; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, *appeal denied* (1976), 63 Ill. 2d 556; *Cowan v. Insurance Company of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315; *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 274 N.E.2d 614, *appeal denied* (1972), 49 Ill. 2d 575; *Palmer v. Sunberg* (1966), 71 Ill. App. 2d 22, 217 N.E.2d 463, *appeal denied* (1966), 34 Ill. 2d 631; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) This is not a collateral estoppel resulting from the prior adjudication against the insured, since that doctrine only applies where the issue was necessarily ruled upon in the first adjudication. (*Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 240 N.E.2d 742; *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315.) Rather, the estoppel referred to is equitable in nature and arises from the doctrine that "the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i.e., the 'Exclusions' provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, i.e., the defense provisions." (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 197, 193 N.E.2d 123, 129; quoted in *Palmer v. Sunberg* (1966), 71 Ill. App. 2d 22, 32, 217 N.E.2d 463, 467, *appeal denied* (1966), 34 Ill. 2d 631; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 749, 358 N.E. 914, 917; and *Associated Indemnity Co. v. Insurance Co. of North America* (1978), 68 Ill. App. 3d 807, 386 N.E.2d 529; see also *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315.) Obviously, therefore, since Aetna in this case refused to defend and did not seek a declaratory judgment that there was no coverage, it cannot raise the defense of noncoverage if it had a duty to defend the tort action.

It is well established in Illinois that the liability insurer's duty to defend a tort action is determined by the allegations of the tort complaint. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, *appeal denied* (1976), 63 Ill. 2d 556; *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 274 N.E.2d 614, *appeal denied* (1972), 49 Ill. 2d 575; *Thompson v. Glover* (1969), 115 Ill. App. 2d 253, 253 N.E.2d 132.) When the allegations of that complaint "state facts which bring the case within, or potentially within, the coverage of the policy, the insurer is from this time on unjustified in not defending the insured." *McFayden v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 170-71, 209 N.E.2d 833, 836, *appeal denied* (1966), 33 Ill. 2d 625, quoted in *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 1007, 274 N.E.2d 614, 617, 618, *appeal denied* (1972), 49 Ill. 2d 575; in accord, *Associated Indemnity Co. v. Insurance Co. of North America* (1978), 68 Ill. App. 3d 807, 386 N.E.2d 529; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Aetna Casualty and Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, *appeal denied* (1976), 63 Ill. 2d 556.) The insurer can safely and justifiably refuse to defend only when the allegations of the complaint *clearly* show that the claim is beyond the policy coverage. We rule that the allegations did not clearly show that the claim was beyond the policy coverage and thus Aetna was obligated to defend the *Wummel* action.

Paragraph 10 of the *Wummel* complaint alleged that Phillips consumed a quantity of alcoholic beverages and certain prescription drugs in Reis' apartment. We agree with the defendant that the paragraph does not clearly indicate that Wummel was contending she could recover against Reis because of these activities. But any doubt as to the adequacy of the pleadings to bring the occurrence within the coverage of a liability policy is resolved in favor of the insured. (*Continental Casualty Co. v. Alexis I. duPont School District* (Del. 1974), 317 A.2d 101; 7A Appleman Insurance Law & Practice §4683 (1962).) Since the complaint must be liberally construed to find a claim within policy coverage, when reasonably possible, we construe the complaint as alleging a claim because of the consumption of drugs and alcohol in Reis' apartment either under the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135), or for negligence.

Aetna, when it denied liability, attempted to protect itself by informing the insured that if Wummel amended the complaint (which she never did), it would reconsider its refusal to defend. But Aetna should have borne in mind that the rules of pleading are very liberal;

furthermore, pleadings may be amended even after trial to conform with the proof. This is one reason why the insurer's duty to defend cannot be limited to claims clearly alleged which fall within the scope of coverage, but must extend, if the insured's reasonable expectations are to be realized, to any claim which under the pleadings might possibly be presented if that claim potentially falls within the scope of the policy coverage. In this case, the evidence presented at the trial of the tort action related not only to what allegedly occurred at Harmony Machine, but also to what allegedly occurred at Reis' apartment. And the appellate court in reversing the case noted that Reis' liability was premised, at least in part, on the fact Phillips obtained alcohol and sleeping pills at her apartment. That court, in reversing the judgment, held that there was no such special relationship as to justify holding Reis liable for not preventing Phillips, an adult male house guest, from having access to her liquor or the contents of her medicine chest. While it is true that the obligation to defend does not depend on the ultimate outcome of the suit (*Thompson v. Glover* (1969), 115 Ill. App. 2d 253, 253 N.E.2d 132; *Allstate Insurance Co. v. Gleason* (1964), 50 Ill. App. 2d 207, 200 N.E.2d 383), nevertheless, the fact that liability at trial was based, at least in part, on the fact Phillips obtained the alcohol and pills where he did supports our conclusion that Paragraph 10, which was never amended, did attempt to state a cause of action or theory of recovery even though, as the appellate court concluded, that claim was, as a matter of law, without merit.[2]

Aetna has conceded in its brief that if the complaint alleged a claim against Reis because of acts occurring at the apartment, it was required to provide coverage. Since we hold that count 10 attempted to allege a cause of action, it follows from Aetna's own admission that it had a duty to defend and that it breached that duty when it refused to defend.

But even if we ignore the allegations in paragraph ten, Aetna had a duty to defend. Aetna contends that because the negligence involved in the *Wummel* claim arose on the premises of Harmony there was no coverage. However, a homeowner's liability policy, in the absence of an express provision to the contrary, is not a policy providing limited coverage only applicable on the designated premises; rather it is designed to be a broad type of coverage protecting the insured nearly everywhere. Where, as here, the homeowner's policy "agreed to pay * * * all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence" and contains no other provision

---

[2] The fact that a complaint is insufficient to state a cause of action does not, of course, excuse an insurer from defending. An insurer must defend if the pleadings state facts bringing the injury within the policy coverage, regardless of the insured's actual liability to the plaintiff. 7A Appleman Insurance Law and Practice §4683 (1962).

describing what coverage is provided, the insurer is liable for any accident for which the insured may be legally liable unless coverage is expressly excluded. (*St. Paul Fire & Marine Insurance Co. v. Thomas* (Fla. App. 1973), 273 So. 2d 117, *cert. denied* (Fla. 1973), 282 So. 2d 638.) And nowhere in the Aetna policy is there an exclusion of liability arising out of any act occurring on business premises, although Aetna could easily have written in such a provision had it wanted to. Rather, the principal exclusion relied upon by Aetna reads as follows:

"This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

* * *

d. to bodily injury or property damage arising out of business pursuits of any insured, except activities therein which are ordinarily incident to nonbusiness pursuits."

All that is excluded by this provision are injuries arising out of business pursuits. Not all that occurs on business premises are business pursuits. However, we need not even determine whether the giving of medication or prescription sleeping pills to an intoxicated person must be considered a business pursuit merely because the individual happens to be an employee, since the exclusion does not apply to activities therein which are ordinarily incident to nonbusiness pursuits.

The parties have cited no cases involving a similar factual situation and we have found none. However, we find *State Farm Fire & Casualty Co. v. MacDonald* (1967), 87 Ill. App. 2d 15, 230 N.E.2d 513, to be analogically persuasive. In that case the insured while engaged in his usual occupation of repairing elevators engaged in a little horseplay. He struck a rubber mallet against a fire door, the mallet rebounded and hurt someone else. The court in finding coverage reasoned at 87 Ill. App. 2d 19-21, 230 N.E.2d 515, 516:

"The question in the case before us is not as readily resolved as that posed in the respective foregoing cases. We must determine whether the momentary deviation from his 'business pursuits'—the horseplay with the mallet—should be classified as an activity ordinarily incident to nonbusiness pursuits, and whether the swinging of the mallet at the time, place and in the manner indicated, had any business purpose whatsoever. Apparently, there are no cases which have decided this precise question. The language of the insurance contract expressing this exception to the exclusion of coverage tends to obscure rather than elucidate the meaning of the clause. The plaintiff suggests a hypothetical situation which, in its opinion, would be covered under this

particular contract clause. It suggests that of a salesman entertaining a customer on a golf course. In such event, the plaintiff contends that the salesman would be engaged in a 'business pursuit,' and if, in the course of the game, he injured his customer while swinging his golf club, the injury would come within the exception to the exclusion of policy as an activity ordinarily incident to nonbusiness pursuits.

Apparently, MacDonald's deviation from his business pursuit is without significance to the plaintiff, and the fact that the horseplay bears no relation to the business purpose or pursuit, also causes it no concern. It appears to us that the hypothetical situation suggested by the plaintiff may readily be considered as analogous to the case before us. Indeed, we find an act of horseplay at least as alien to repairing an elevator and as akin to a nonbusiness pursuit as an inadvertent and injurious golf swing, which may have business overtones. But regardless of the propriety of such analogy, it is our task to construe the policy clause in question with reference to the facts of this particular case.

It is beyond dispute that the meaning of the phrase, 'other than activities therein which are ordinarily incident to nonbusiness pursuits' is unclear, ambiguous, and it has long been recognized that an insurance contract is unlike most contracts. In an insurance contract, absent statutory requirements, the company determines and drafts its policy provisions. The insured takes the contract as he finds it. Any lack of clearness in the meaning of such contract is the responsibility of the insurer. That construction of the policy will be adopted which favors the insured and resolves the uncertainty in his favor. * * *.

A construction of the clause of the policy in question which resolves the uncertainty in favor of the insured can be made without perverting the ordinary meaning of the exclusionary clause. Under the language of the clause, it is definite and clear that certain types of activities which occur as a part of "business pursuits" were meant to be covered by the contract and included within the protection afforded by the policy. The incident under consideration occurred during a business pursuit, and it is at least as logical to conclude that the defendant's impulsive action, which caused the injury, was the type ordinarily incident to a nonbusiness pursuit, as it would be to reach an opposite determination. Equivocal expressions in an insurance contract whereby an insurer seeks to narrow the range of its liability are properly construed most strongly against the insurer. * * * Under the circumstances

of this case and the pertinent provisions of the policy, we believe that further inquiry into the enigma of the meaning of the exception to the exclusionary clause would be fruitless."

An insured reading the exclusion would reasonably assume that it was the nature of the activity which was controlling (see 7A Appleman Insurance Law & Practice, §4501.10 (Cum. Supp. 1978)), and that the insurer only meant to exclude peculiarly business activities from coverage. Otherwise, if we consider activities to be excluded merely because performed on business premises or during business hours, we ignore the language of the exemption to the exclusion. As we noted earlier, if the insurer had intended to exclude all activities conducted on the business premises it could have said so. Since it did not, we will not write such language into the contract.

Since the allegation that the insured gave medication and sleeping pills to Phillips is not clearly beyond the policy coverage, it is immaterial whether the allegations that the insured permitted or ordered Phillips to leave the premises fall within the scope of the exclusion. The duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery, one of which is within the coverage of the policy although the other may not be. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

The insurer belatedly has raised the contention that an exclusion of liability coverage and medical payments coverage, where the bodily injury arose out of any premises other than an insured premises, limits coverage to Reis' apartment. The inconsistency of this contention is demonstrated by the fact that the policy expressly provides medical payments coverage for accidents on the insured premises or *elsewhere*. The cited exclusion only applies to injuries arising out of the premises themselves, presumably such accidents as falling glass. The injury here did not arise out of any premises and the exclusion is clearly inapplicable.

The insurer, both in its motion for summary judgment and in its brief on appeal, has contended that there was no coverage because the complaint only sought to impose liability upon Reis in her capacity as owner and officer of the company. As we have already ruled, this is incorrect since liability was also alleged against Reis as an apartment owner. But in addition, we would point out that Reis could not have been held liable solely because she was an owner and officer of Harmony Machines. It is hornbook law that "[t]he mere fact * * * that a person is an officer * * * of a corporation does not render him liable for the torts of a corporation or of other officers, directors, or agents, but he must be so connected with the tortious act that he would be personally liable for his willful act or negligent conduct without regard to the liability of the corporation." (13 Ill. L. & Prac. *Corporations* §352, at 509 (1955), in

accord 3A Fletcher, Cyclopedia Corporations §1137 (Perm. ed.).) Reis could only have been held liable if she in some way participated in the acts alleged in the complaint. And the complaint never suggested Reis was liable as principal for Aldal's conduct. Rather, throughout the complaint, the plaintiff alleged that Reis and Aldal performed or failed to perform the acts complained of. It may be that these allegations as to Reis were groundless, and that she was neither at her apartment nor on the business premises when the complained of conduct occurred, as Aetna seems to contend in its memorandum in support of its motion for summary judgment. But the insurer in its policy expressly agreed to defend any suit against the insured seeking damages because of bodily injury to which the insurance applied, even if any of the allegations of the suit were groundless, false and fraudulent.

## II.

Since Aetna breached its contract by refusing to defend, it cannot now contend that coverage does not exist. Accordingly, should the judgment against the insured be reinstated, Aetna will be liable, as a matter of law, for the amount of that judgment up to the policy limits (*Associated Indemnity Co. v. Insurance Co. of North America* (1978), 68 Ill. App. 3d 807, 386 N.E.2d 529; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 214 N.E.2d 614, *appeal denied* (1972), 49 Ill. 2d 575, plus interest on the total amount until paid. In any event, Aetna is liable for the cost incurred by the insured for conducting her own defense from the time it denied liability. (*Tiffiny Decorating Co. v. General Accident Fire & Life Assurance Corp.* (1973), 12 Ill. App. 3d 597, 299 N.E.2d 378; *County Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 239 N.E.2d 498; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) Since, however, an insurer is not required to pay attorney's fees to counsel whom the insured engaged to guard against a judgment in excess of the insurance where the insurer has not forced the insured by its actions to engage its own attorney (*McCabe v. Employers' Liability Assurance Corp.* (1937), 212 N.C. 18, 192 S.E. 687; *Fidelity & Casualty Co. v. Riley* (5th Cir. 1967), 380 F.2d 153; 7A Appleman Insurance Law & Practice §4691 (1962)), Aetna should be held liable for only the costs of defense incurred by the insured from the time it denied liability and withdrew from the defense of the suit. (*Allstate Insurance Co. v. Consolidated Mutual Insurance Co.* (1970), 35 App. Div. 2d 535, 313 N.Y.S.2d 181.) Under Illinois law, it is not liable for the attorneys' fees incurred by the insured in pursuing the declaratory judgment action. (*Brown Bag Co. v. Bituminous Casualty Corp.* (1969), 117 Ill. App. 2d

287, 254 N.E.2d 577; *County Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 239 N.E.2d 498.) The insurer is liable for all of the costs of Reis' appeal from the tort judgment. *Reichert v. Continental Insurance Co.* (La. App. 1974), 290 So. 2d 730, *writ denied* (La. 1974), 294 So. 2d 545.

### III.

■■ Reis, both below and on appeal, also contended that the insurer, having breached its duty to defend, is liable, as a matter of law, for the entire amount of the judgment, even that which was in excess of the policy limits. At present, of course, there is no judgment against the insured. But, since the determination of the Appellate Court for the Second District is still subject to appeal, the issue is not moot. We cannot agree, however, with the appellant that the insurer's liability for an excess judgment follows automatically from a breach of its duty to defend. We recognize that the third district in *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, *appeal denied* (1976), 63 Ill. 2d 556, indicated that the insurer would be liable for the entire judgment even if it exceeds the policy limits. (Compare *Blakely v. American Employers' Insurance Co.* (5th Cir. 1970), 424 F.2d 728.) However, that statement was only dictum since the court limited recovery to the policy limits, the insured and injured party having entered into an agreement holding the insured harmless from any personal recovery against her. The general rule is to the contrary. The mere failure to defend does not, in the absence of bad faith, render the insurer liable for that amount of the judgment in excess of the policy limits. (*Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Comunale v. Traders & General Insurance Co.* (1958), 50 Cal. 2d 654, 328 P.2d 198; *National Union Fire Insurance Co. v. Carricato* (Ky. 1969), 439 S.W.2d 957; *Hendry v. Grange Mutual Casualty Co.* (5th Cir. 1967), 372 F.2d 222.) Nevertheless, damages for a breach of the duty to defend are not inexorably imprisoned within the policy limits, but are measured by the consequences proximately caused by the breach. (*State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.* (1970), 9 Cal. App. 3d 508, 88 Cal. Rptr. 246.) Accordingly, if the tort judgment is reinstated and if Reis can show that Aetna in bad faith refused to defend (*Associated Indemnity Co. v. Insurance Co. of North America* (1978), 68 Ill. App. 3d 807, 386 N.E.2d 529), or in bad faith or negligently failed to settle the claim, or because it abandoned her defense, the excess judgment was entered, she may recover the total amount of the judgment against her.

Since the trial court erroneously ruled for the defendant on the issue of its duty to defend, it did not determine the amount of damages.

Accordingly, while we determine that Aetna was required to defend the tort action and breached its duty in failing to do so, we reverse for a determination of the amount of damages Aetna must pay. Minimally, as set forth in Part II of this opinion, it is liable for the attorney's fees from the time it refused to defend plus the costs of appeal. In the event the tort judgment is reinstated, then it would at least be liable for that part of the judgment within the policy limits, plus interest and costs.

For the foregoing reasons, the judgment of the circuit court is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

JOHNSON, P. J., and LINN, J., concur.

SUPPLEMENTAL OPINION OF DENIAL OF REHEARING

MR. JUSTICE ROMITI delivered the opinion of the court:

■■ On petition for rehearing Allstate contends that *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, recently decided by our supreme court, requires us to reverse and remand the case to the trial court for determination of coverage. We find that we no longer have jurisdiction to consider this issue as it is moot. *Siefferman v. Johnson* (1950), 406 Ill. 392, 94 N.E.2d 317; *Railway Express Agency, Inc. v. Illinois Commerce Com.* (1940), 374 Ill. 151, 28 N.E.2d 116; 2 Ill. L. & Prac. *Appeal and Error* §22 (1953).

The supreme court in *Thornton* held that because of the conflicting interest of the insurer and the insured, the insurer's failure to defend the underlying tort proceedings did not estop it from raising, in a garnishment proceeding, the defense of noncoverage as a defense against the plaintiff's attempt to recover the judgment awarded in the tort action. The court in *Thornton* did, however, hold that the insurer was liable for the costs of defense. Since our original decision was handed down, the Illinois Supreme Court denied leave to appeal in *Wummel v. Harmony Machines, Inc.*, the underlying action herein involved. Since there neither is nor can be a judgment in favor of Wummel against Reis, any issue whether the insurer is liable for the judgment or is estopped to deny coverage is now moot. There being no judgment existing against Reis, the insurer is only liable under count I for the costs of defense, and *Thornton* did not alter the insurer's liability in this regard.

Accordingly, the defendant's petition for rehearing is denied.

JOHNSON and LINN, JJ., concur.